_____
Honorable Gregg W. Zive
United States Bankruptcy Judge

Entered on Docket
January 06, 2017

PETER J. BENVENUTTI (CA Bar No. 60566 – *admitted Pro Hac Vice*)
JANE KIM (CA Bar No. 298192 – *admitted Pro Hac Vice*)
DARA L. SILVEIRA (CA Bar No. 274923 – *admitted Pro Hac Vice*)
**KELLER & BENVENUTTI LLP**
650 California Street, Suite 1900
San Francisco, California  94108
Telephone:     (415) 364-6798
Facsimile:     (650) 636-9251

JEFFREY L. HARTMAN (Bar No. 1607)
**HARTMAN & HARTMAN**
510 West Plumb Lane, Suite B
Reno, Nevada 89509
Telephone: (775) 324-2800
Facsimile: (775) 324-1818

Attorneys for Debtor New Cal-Neva Lodge, LLC

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>NEW CAL-NEVA LODGE, LLC,<br><br>    Debtor. | Case No. 16-51282-gwz<br><br>Chapter 11<br><br>**ORDER (A) AUTHORIZING AND APPROVING BIDDING PROCEDURES, (B) APPROVING NOTICE PROCEDURES, AND (C) SETTING A DATE FOR THE TRANSACTION APPROVAL HEARING**<br>Hearing Date:   December 20, 2016<br>Time:  2:00 p.m. |

The matter coming before the Court on the Motion (the "Motion")[1] (Docket No. 205) of New Cal-Neva Lodge, LLC ("Debtor"), the debtor in possession in the above-captioned bankruptcy case, pursuant to sections 105, 107(b)(1), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9014 and 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Nevada (the "Local Rules"), for entry of orders (I)(A) Authorizing and Approving Bidding Procedures, (B) Approving Notice Procedures and Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases, and (C) Setting a Date for the Transaction Approval Hearing, and (II) Authorizing and Approving (A) the Sale of Certain Assets Free and Clear of All Liens, Claims, Encumbrances and Interests or Financing Transaction and (B) the Assumption and Assignment of Certain Contracts; and the Court having reviewed the Motion; and the Court having determined the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and other parties-in-interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and the Court having found sufficient cause appearing therefor,

The Court considered the papers filed in support of, and in opposition to, the relief requested as well as the presentations of counsel. As permitted by F.R. Civ. P. 52 and F.R. Bankr. P. 7052, made applicable to this proceeding by F.R. Bankr.P. 9014(c), the Court stated its findings of fact and conclusions of law on the record. In addition,

THE COURT HEREBY MAKES THE FOLLOWING SPECIFIC FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

B.     The statutory predicates for the relief requested in the Motion are (i) sections 105, 107(b)(1), 363 and 365 of the Bankruptcy Code; (ii) Bankruptcy Rules 2002, 6004, 6006, and 9014; and (iii) Local Rule 6004.

C.     Good and sufficient notice of the relief granted by this Order has been given and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Order (including, without limitation, with respect to the proposed Bidding Procedures) has been afforded to those parties entitled to notice pursuant to Local Rule 2002-1(b).

D.     The Debtor's proposed Transaction Notice (substantially in the form attached to this Order as **Exhibit 2**), as set forth in the Motion, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Bidding Procedures, the Auction (if necessary), and the Transaction Approval Hearing.  No other or further notice is required.

E.     The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**, are fair, reasonable, and appropriate and are designed to maximize recovery with respect to the sale of the Assets or a financing transaction.

F.     The Debtor has demonstrated sound business justifications for offering the sale of the Assets or a financing transaction pursuant to the Bidding Procedures.

G.     The entry of this Order is in the best interests of the Debtor and its estate, creditors, and interest holders and all other parties in interest herein.

Based upon the foregoing and the findings stated on the record and after due consideration and good cause appearing therefor:

IT IS ORDERED, ADJUDGED AND DECREED, that:

1.     Those portions of the Motion seeking approval of the Bidding Procedures, the Notice Procedures, and setting the time, date and place of the Transaction Approval Hearing are GRANTED.

2.     Except as expressly provided herein, nothing herein shall be construed as a determination of the rights of any party in interest in these chapter 11 cases.

**BIDDING PROCEDURES ORDER**

P066.DOCX

**Bidding Procedures**

3.     The Bidding Procedures attached hereto as **Exhibit 1** are hereby APPROVED.

4.     The Bidding Procedures shall apply to all Qualified Bidders and the conduct of the Auction and any Transaction.

5.     The Debtor may, with the consent of the Consent Parties, enter into a stalking horse agreement at any time prior to the Bid Deadline, provided, however, that such stalking horse agreement shall be subject to higher and better offers pursuant to the Bidding Procedures. The Debtor shall file such stalking horse agreement using the negative notice procedures set forth in Local Rule 9014.1.  In the event that an objection is filed to the stalking horse agreement, any such objection shall be heard at the Transaction Approval Hearing or such earlier hearing as may be scheduled, subject to the availability of the Court, the Debtor, the Consent Parties, and the objecting party.

6.     The Debtor may, with the consent of the Consent Parties, establish a minimum bid amount for a Qualified Bid.

7.     By subsequent order of the Court sought on motion on notice to all parties in interest, the Bidding Procedures or dates set forth in this Order may be modified or suspended in favor of a negotiated transaction with a single purchaser or financing party on terms acceptable to the Debtor and all of the Consent Parties.

**Transaction Notice Procedures**

8.     The Transaction Notice, substantially in the form attached to hereto as **Exhibit 2**, is sufficient to provide effective notice to all interested parties of the Bidding Procedures, the Auction, and the assumption and assignment of the Assumed Contracts, pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006, and is hereby approved.

9.     Immediately after entry of this Bidding Procedures Order (or as soon as reasonably practicable thereafter), the Debtor (or its agent) shall serve the Transaction Notice, by first-class mail, postage pre-paid, upon (i) the Consent Parties, (ii) any parties requesting notices in this case pursuant to Bankruptcy Rule 2002, (iii) all parties known by the Debtor to assert a lien on any of the Purchased Assets, (iv) the Office of the United States Attorney for the District

of Nevada, (v) the Office of the Attorney General in California and Nevada,

(vi) the Office of the Secretary of State of California, (vii) all taxing authorities having

jurisdiction over any of the Assets, including the IRS, (viii) all environmental authorities having

jurisdiction over any of the Assets, and (ix) all known or potential creditors of the Debtor.

10.     The Debtor shall file a motion seeking approval of the Transaction by no later

than February 21, 2017, which motion shall set forth the time to object to approval of the

Transaction and the form of such objections.

### Assumption and Assignment Procedures

**11.**     The procedures relating to assumption and/or assignment of the Assumed

Contracts (the "Contract Procedures"), including the form of Cure Notice attached hereto as

**Exhibit 3**, are hereby authorized, approved, and made part of this Order as if fully set forth

herein.  This Order is not intended to approve either a specific transaction, the terms of any such

transaction (including for sale free and clear of any liens or other interests), or assumption or

rejection of any executory contracts, all of which will be the subject of a subsequent motion and

order.

12.     The Debtor shall serve the Cure Notice, substantially in the form of **Exhibit 3**

attached hereto, upon each counterparty to a contract that may be an Assumed Contract by no

later than **January 11, 2017**.  The Cure Notice shall identify the amounts, if any, that the Debtor

believes are owed to each counterparty to an Assumed Contract in order to cure any defaults that

exist under such contract (the "Cure Amounts").  The Debtor shall also file the Cure Notice with

a global exhibit listing Cure Amounts for all contracts that may be Assumed Contracts by

January 31, 2017.

13.     The Debtor shall file a notice of the Successful Bidder within 24 hours of the

conclusion of the Auction and send such notice by overnight mail to all counterparties of

Assumed Contracts.

14.     To the extent there is a contract added to the list of contracts to be assumed

pursuant to the Successful Bidder's Purchase Agreement selected at the Auction and the

counterparty to such contract did not previously receive a Cure Notice, each such contract will

be listed on an exhibit to the Successful Bidder's Transaction Agreement, and such contract counterparties will be sent a separate Cure Notice setting forth such contracts' proposed cure amounts by overnight mail within 24 hours of the conclusion of the Auction.

15.    The inclusion of a contract, lease, or other agreement on the Cure Notice shall not constitute or be deemed a determination or admission by the Debtor and its estate or any other party in interest that such contract, lease, or other agreement is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights with respect thereto shall be reserved.

16.    If a Contract is assumed and/or assigned pursuant to Court Order, then unless the Assumed Contract counterparty properly files and serves an objection to the Cure Amount contained in the Cure Notice by the Assumption Objection Deadline (defined below), the Assumed Contract counterparty shall receive at the time of the assumption and/or assignment (as specified in the Motion) the Cure Amount as set forth in the Cure Notice, if any, which Cure Amount also shall be binding on the Successful Bidder.  Any objection must set forth a specific default in the executory contract or unexpired lease, claim a specific monetary amount that differs from the amount, if any, specified by the Debtor in the Cure Notice, and set forth any reason why the counterparty believes the executory contract or unexpired lease cannot be assumed and/or assigned to the Successful Bidder.

17.    If any counterparty objects for any reason to the assumption and/or assignment of an Assumed Contract (including to a Cure Amount) (an "Assumption Objection"), such counterparty must file the objection and serve it so as to be actually received on or before the Assumption Objection Deadline (defined below), upon the Notice Parties by no later than (i) **4:00 p.m. (prevailing Pacific Time) on February 1, 2017**, or (ii) the date otherwise specified in the Cure Notice (the "Assumption Objection Deadline"), provided, however, counterparties may make any objection to the assumption and assignment of an Assumed Contract solely with respect to the Successful Bidder's ability to provide adequate assurance of future performance under the Assumed Contract at the Transaction Approval Hearing (as defined below).

**Other Relief Granted**

18.    A status conference and hearing shall be held in this Court on **February 21, 2017, at 2:00 p.m.** (the "Pre-Auction Hearing"), to approve the designation of Qualified Bids and the determination of the Starting Bid under the Bidding Procedures and to consider any other issues that any party asserts, or the Court determines, should be resolved prior to the Auction, including all issues relating to the conduct of the Auction, which may include procedural rules governing the Auction, the qualification of any Potential Bidders or bids, as well as any party's right to credit bid. Qualified Bidders are welcome to attend the Pre-Auction Hearing, but do not need to attend the Pre-Auction Hearing in person.

19.    Any and all written objections and responses, and all supporting authorities, that any party wishes to have heard at the Pre-Auction Hearing must be: (a) in writing, not to exceed twelve (12) pages; (b) signed by counsel or attested to by the objecting or responding party; (c) in conformity with the Bankruptcy Rules and the Local Rules; (d) filed with the Court; and (e) served in accordance with the Local Rules so as to be received on or before **5:00 p.m. (prevailing Pacific Time) on February 16, 2017**, provided, however, that any objections or responses solely with respect to the qualification of bids or the determination of the Starting Bid may be made at the Pre-Auction Hearing.

20.    The Auction is scheduled for **10:00 a.m. (PT) on February 28, 2017**, to be conducted under the supervision of this Court, located at the C. Clifton Young Federal Building, 300 Booth Street, Reno, Nevada.

21.    A hearing (the "Transaction Approval Hearing"), at which the Debtor shall seek approval of the Successful Bid (as defined in the Bidding Procedures) shall be held in this Court on **February 28, 2017**, following the conclusion of the Auction. The Transaction Approval Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Transaction Approval Hearing.

22.    In the event there is a conflict between this Order and the Motion or the Agreement, this Order shall control and govern.

23.    Nothing in this Order, the Agreement or the Motion shall be deemed to or

1   constitute the assumption or assignment of an executory contract or unexpired lease.

2         24.     This Court shall retain jurisdiction with respect to all matters arising or related to

3   the implementation or interpretation of this Order.

4         25.     This Order shall be effective immediately upon entry, and any stay of orders

5   provided for in Bankruptcy Rules 6004 or 6006 or any other provision of the Bankruptcy Code

6   or Bankruptcy Rules is expressly lifted. The Debtor is not subject to any stay in the

7   implementation, enforcement or realization of the relief granted in this Order, and may, in their

8   discretion and without further delay, take any action and perform any act authorized under this

9   Order.

10   PREPARED AND SUBMITTED BY:

11   /s/ Jeffrey Hartman

12   Jeffrey Hartman
      HARTMAN & HARTMAN

13        and
      Peter J. Benvenutti

14   KELLER & BENVENUTTI LLP
      Attorneys for Debtor

15   NEW CAL-NEVA LODGE, LLC

16

17   APPROVED AS TO FORM AND CONTENT:

18   _____

19   William B. Cossitt
      OFFICE OF THE UNITED STATES TRUSTEE

20   Trial Attorney for UNITED STATES TRUSTEE
      TRACY HOPE DAVIS

21

22   APPROVED AS TO FORM AND CONTENT:

23

24   _____

25   Shirley S. Cho
      PACHULSKI STANG ZIEHL & JONES LLP

26   Attorneys for the OFFICIAL
      COMMITTEE OF UNSECURED CREDITORS

27

28   APPROVED AS TO FORM AND CONTENT:

BIDDING PROCEDURES ORDER

P066.DOCX

1

2 Dawn M. Cica
BLACK & LOBELLO
3 Attorneys for THE PENTA BUILDING GROUP, INC.

4 APPROVED AS TO FORM AND CONTENT:

5

6

Frank J. Wright
7 COATS ROSE P.C.
Attorneys for HALL CA-NV, LLC
8

9

10 APPROVED AS TO FORM AND CONTENT:

11

12 Jason E. Rios
FELDERSTEIN FITZGERALD
13 WILLOUGHBY & PASCUZZI LLP
Attorneys for LADERA DEVELOPMENT, LLC
14

15

16 DISAPPROVED AS TO FORM AND CONTENT:

17

18 Alan R. Smith
LAW OFFICES OF ALAN R. SMITH
19 Attorneys for MARRINER REAL ESTATE, LLC,
PAUL AND EVY PAYE, LLC AND LESLIE P. BUSICK
20

21

22

23

24

25

26

27

28

9

P066.DOCX

## **ALTERNATIVE METHOD Re: RULE 9021**

In accordance with Local Rule 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

_____    The court has waived the requirement set forth in LR 9021(b)(1).

_____    No party appeared at the hearing or filed an objection to the paper.

_____    I have delivered a copy of the proposed order to all counsel who appeared at the hearing, any trustee appointed in this case and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond as indicated on the order.

### *Debtor's Counsel:*

X_____    Prepared the form of this order per Judge Zive's changes

_____    Waived the right to review the order and/or

_____    Appeared at the hearing, waived the right to review the order

_____    Matter unopposed, did not appear at the hearing, waived the right to review the order

_____    Disapproved the form of this order

_____    Did not respond to the paper

### *Trustee:*

_____    Approved the form of this order

_____    Disapproved the form of this order

_____    Waived the right to review the order and/or

_____    Did not respond to the paper

_____    Did not appear at the hearing or object to the paper

_____    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

I declare under penalty of perjury that the foregoing is true and correct.

Submitted by:

**HARTMAN & HARTMAN**

/S/ Jeffrey L. Hartman
Jeffrey L. Hartman

# EXHIBIT 1

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale of certain assets and assumption of certain liabilities of New Cal-Neva Lodge, LLC (the "Debtor") to, or financing transaction that maximizes value to the Debtor's estate with, a Successful Bidder or a Back-Up Bidder (each as defined below) (in each event, the "Transaction").

The Debtor has determined that: (A) the Transaction should be subject to competitive bidding as set forth herein, and (B) the transfer of the Debtor's rights, title and interests in and to the Assets (as defined below) should be subject to approval by the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court") pursuant to sections 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").

On December 6, 2016, the Debtor filed a Motion for Orders ((I)(A) Authorizing and Approving Bidding Procedures, (B) Approving Notice Procedures, (C) Setting a Date for the Transaction Approval Hearing, and (II) Authorizing and Approving (A) the Sale of Certain Assets Free and Clear of All Liens, Claims, Encumbrances and Interests or Financing Transaction and (B) the Assumption and Assignment of Certain Contracts (the "Sale Motion").

On [•], 2016, the Bankruptcy Court entered an Order approving, among other things, the Bidding Procedures set forth herein (the "Bidding Procedures Order").

### Bidding Process

The Bidding Procedures set forth herein describe, among other things, the assets available for sale or financing, the manner in which each person who wishes to participate in the Bidding Process (a "Potential Bidder") may gain access to or continue to have access to due diligence materials concerning the Assets, the manner in which bidders and bids become Qualified Bidders (as defined below) and Qualified Bids (as defined below), respectively, the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined below), the ultimate selection of the Successful Bidder (as defined below), and the Bankruptcy Court's approval thereof (collectively, the "Bidding Process"). In the event that the Debtor and any party disagree as to the interpretation or application of these Bidding Procedures, the Bankruptcy Court will have jurisdiction to hear and resolve such dispute.  The following are key dates of which all interested parties should be aware:

*Financial Bona Fides Submission Deadline:  **February 6, 2017**

*Bid Deadline:  **February 15, 2017**

*Deadline for Pleadings and Authorities for Pre-Auction Hearing:  **February 16, 2017**

P067J.DOCX

\*Notification of Qualified Bid Status:  **February 17, 2017**

\*Identification of Starting Bid:  **February 20, 2017**

\*Pre-Auction Hearing:  **February 21, 2017**

\*Auction:  **February 28, 2017**

\*Sale Hearing:  **February 28, 2017**

\*Closing Date:  No later than 5 days after approval of the Transaction by the Bankruptcy Court.

Assets To Be Sold

The Debtor is offering for sale or financing, in one or more transactions, substantially all of the Debtor's assets, including but not limited to the 191-room resort and casino known as the Cal Neva Lodge & Casino, entitlements to condominiums on the resort property, and either equity in the Debtor's wholly-owned subsidiary, CR Lake Tahoe, LLC, or, subject to the full payment of creditors of CR Lake Tahoe, LLC, the property owned by CR Lake Tahoe, LLC known as the Fairwinds Estate (collectively, the "Assets").

"As Is, Where Is"

The sale or financing of the Assets will be on an "as is, where is" basis and without surviving representations or warranties of any kind, nature, or description by the Debtor, its agents, or estate.

Free Of Any And All Claims And Interests

In the event that the Transaction is a sale, all of the Debtor's rights, title and interests in and to the Assets, or any portion thereof, to be acquired will be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon and there against (collectively, the "Claims and Interests") to the extent permitted by sections 363 and 365 of the Bankruptcy Code and other applicable law, such Claims and Interests to attach to the net proceeds of the sale of such Assets (without prejudice to any claims or causes of action regarding the priority, validity or enforceability thereof), except to the extent otherwise set forth in the relevant sale or purchase agreement(s) of the Successful Bidder.  In the event that the Transaction is a financing transaction, all Claims and Interests shall be satisfied, paid in full, or remain unimpaired and attach to the Assets, except to the extent otherwise set forth in the relevant financing agreement(s) of the Successful Bidder with the consent of the holder of such Claim or Interest.

2

<u>Access to Due Diligence</u>

Unless otherwise ordered by the Bankruptcy Court, for cause shown, or as otherwise determined by the Debtor, in consultation with the Official Committee of Unsecured Creditors appointed in the Debtor's chapter 11 case (the "<u>Creditors' Committee</u>"), each Potential Bidder who wishes to receive access to due diligence must execute a confidentiality agreement in form and substance satisfactory to the Debtor.  A Potential Bidder that has already entered into a confidentiality agreement with the Debtor that has not yet expired is not required to enter into an additional confidentiality agreement, provided, however, that such Potential Bidder provide a statement waiving any of its rights under such confidentiality agreement that are in conflict with the Bidding Procedures or that would otherwise prohibit disclosures regarding the Potential Bidder, or any Transaction it may enter into, to the Notice Parties (as defined below).

<u>Due Diligence</u>

The Debtor shall provide any party that has executed an acceptable confidentiality agreement as described above with such due diligence access to materials and information relating to the Assets as the Debtor deems appropriate. The Debtor's real estate broker, CBRE, Inc. ("<u>CBRE</u>"), will maintain electronic data rooms and provide access of the same and will coordinate all reasonable requests for additional information and due diligence access from Potential Bidders.  Any interested parties wishing access to due diligence are encouraged to contact Henry Bose (Henry.Bose@cbre.com) or Mark McDermott (Mark.H.McDermott@cbre.com) at CBRE with a copy to Ed Kim (EKim@provincefirm.com).

Due diligence access may include management presentations as may be scheduled by CBRE or the Debtor, on-site inspections, meetings with the Debtor's general contractor as may be coordinated by CBRE, and other matters which a Qualified Bidder may reasonably request and as to which the Debtor, in its reasonable business judgment, may agree. The Debtor may, in its discretion, coordinate diligence efforts such that multiple Potential Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations, site inspections, or meetings with the Debtor's general contractor. The general contractor, The PENTA Building Group, LLC ("<u>PENTA</u>"), has indicated that PENTA's senior project executive will be available on-site for construction completion and other construction due diligence on the following dates: December 19, 2016; January 5, 2017; January 19, 2017; and February 2, 2017. Neither the Debtor nor any of its affiliates (or any of their respective representatives) will be obligated to furnish any information relating to the Assets to any person other than to Potential Bidders. No additional due diligence for any party other than a Qualified Bidder who has submitted a Qualified Bid will continue after the Bid Deadline (as defined below). The Debtor makes no representation or warranty as to the information to be provided through this due diligence process or otherwise, except to the extent set forth in any definitive agreement(s) with any Successful Bidder executed and delivered by the Debtor.

Potential Bidders may also contact directly the Creditors' Committee's financial advisor for any questions directed to the Creditors' Committee: Paul Hamilton, Province Advisors, (phamilton@provincefirm.com) with a copy to Henry.Bose@cbre.com.

Participation Requirements

Potential Bidders interested in participating at the Auction must deliver to the Notice Parties (as defined below) at the addresses provided below by no later than **February 6, 2017**:

(a)      sufficient information, as determined by the Debtor in consultation with the Creditors' Committee, which may include current audited financial statements and latest unaudited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets (or any portion thereof), current audited financial statements and latest unaudited financial statements of the equity holders of the Potential Bidder who will guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement that will allow the Debtor and its advisors to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the Transaction.

(b)      the identity of each entity that will be bidding for the Assets or otherwise sponsoring or participating in connection with such bid, and the complete terms of any such participation, including the disclosure of any existing relationship between the Potential Bidder or any of its principals or affiliates and the Debtor or any of its direct or indirect equity holders, affiliates, principals, or insiders;

A Potential Bidder that has otherwise complied with the requirements described above, and that the Debtor determines in its reasonable business judgment, after consultation with its counsel and other advisors and the Notice Parties (defined below) and their advisors, is likely (based on availability of financing, experience and other considerations) to be able to consummate the Transaction, will be deemed a "Qualified Bidder," subject to approval by the Bankruptcy Court of such designation at the Pre-Auction Hearing.

Bid Deadline

A Qualified Bidder that desires to make a bid must submit its bid in writing by electronic mail so as to be received by the following parties (collectively, the "Notice Parties") on or before **February 15, 2017, at noon (PT)** (the "Bid Deadline"): (i) the Debtor: (a) New Cal-Neva Lodge, LLC, Attn: Robert Radovan, 1336 Oak Avenue Suite D, Saint Helena, CA 94574, Robert@CriswellRadovan.com; (b) Debtor's counsel: Keller & Benvenutti LLP, Attn: Peter J. Benvenutti, Esq. and Jane Kim, Esq., 650 California Street, Suite 1900, San Francisco, CA 94108, pbenvenutti@kellerbenvenutti.com, jkim@kellerbenvenutti.com; (c) Debtor's counsel: Hartman & Hartman, Attn: Jeffrey L. Hartman, Esq., 510 West Plumb Lane, Suite B, Reno, NV

4

89509, notices@bankruptcyreno.com; and (d) Debtor's broker: CBRE, Inc., Attn: Henry Bose and Mark McDermott, 101 California Street, 44th Floor, San Francisco, CA 94111, Henry.Bose@cbre.com, Mark.H.McDermott@cbre.com; (ii) Cal Neva Lodge, LLC (the "Parent"): (a) Cal Neva Lodge, LLC, Attn: Robert Radovan, 1336 Oak Avenue Suite D, Saint Helena, CA 94574, Robert@CriswellRadovan.com; (b) Parent's Counsel: Jeffer Mangels Butler & Mitchell LLP, Attn: David M. Poitras and David Sudeck, 1900 Avenue of the Stars, 7th Floor, Los Angeles, CA 90067; dpoitras@jmbm.com; dsudeck@jmbm.com; and (c) Parent's Nevada counsel: Hartman & Hartman, Attn: Jeffrey L. Hartman, Esq., 510 West Plumb Lane, Suite B, Reno, NV 89509, notices@bankruptcyreno.com; (iii) the Creditors' Committee: (a) counsel for the Creditors' Committee: Pachulski Stang Ziehl & Jones LLP, Attn: John D. Fiero Esq. and Shirley S. Cho, Esq., 150 California Street, 15th Floor, San Francisco, CA 94111, jfiero@pszjlaw.com, scho@pszjlaw.com; and (b) financial advisor for the Creditors' Committee: Province, Paul Hamilton and Edward Kim, phamilton@provincefirm.com, ekim@provincefirm.com; (iv) Hall CA-NV, LLC ("Hall"): counsel for Hall: Coats Rose P.C., Attn: Frank J. Wright, Esq., 14755 Preston Road, Suite 600, Dallas, TX 75254, fwright@coatsrose.com; (v) Ladera Development, LLC ("Ladera"): counsel for Ladera: Felderstein Fitzgerald Willoughby & Pascuzzi LLP, Attn: Jason E. Rios, Esq., 400 Capitol Mall, Suite 1750, Sacramento, CA 95814, jrios@ffwplaw.com; and (vi) PENTA: counsel for PENTA: Black & LoBello, Attn: Dawn M. Cica, Esq., 10777 W. Twain Avenue, Suite 300, Las Vegas, NV 89135, dcica@blacklobello.law. The Creditors' Committee, Hall, Ladera, and PENTA are collectively the "Consent Parties."

Qualified Bid

A bid submitted will be considered a Qualified Bid only if the bid is submitted by a Qualified Bidder, pursuant to the previous paragraph and complies with all of the following (a "Qualified Bid"):

(a)     it is received by the Notice Parties by the Bid Deadline;

(b)     it includes a duly authorized and executed asset transaction agreement, including the purchase price for the Assets or amount of financing to be provided expressed in U.S. Dollars, together with all exhibits and schedules thereto and such additional ancillary agreements as may be required by the bidder with all exhibits and schedules thereto (or term sheets that describe the material terms and provisions of such ancillary agreements) (together, a "Proposed Agreement"), and, if the Debtor has previously filed or otherwise made available to Qualified Bidders a form agreement or stalking horse agreement (the "Form Agreement"), a copy of the Proposed Agreement marked to show those amendments and modifications to the Form Agreement;

(c)     the Proposed Agreement sets forth a closing date of no later than five days after entry of an order of the Bankruptcy Court approving the Transaction (subject only to any title

insurance requirements);

(d)    it is accompanied by a good faith deposit in the form of a wire transfer (to the client trust fund of Debtor's counsel), certified check or such other form acceptable to the Debtor, payable to the order of the Debtor (or such other party as the Debtor may determine) in an amount equal to $2 million, to be dealt with as provided for under "Good Faith Deposits" herein;

(e)    it includes a letter stating that the bidder's offer is irrevocable until the end of the "Irrevocable Period," which is the earlier of (i) closing of the Transaction to the Successful Bidder or a Back-Up Bidder (each as defined below), and (ii) (x) with respect to the Successful Bidder only, twenty-five (25) days from the Transaction Approval Hearing (as defined below), subject to further extensions as may be agreed to under the applicable transaction agreement or (y) the Back-Up Bid Expiration Date (as defined below);

(f)    it includes written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the proposed transaction, that will allow the Debtor and Consent Parties to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the transaction contemplated by the Proposed Agreement including proof of funds for any cash component of the bid payable at closing;

(g)    it is not conditioned on (i) the outcome of unperformed due diligence by the bidder and/or (ii) obtaining financing;

(h)    it identifies with particularity which executory contracts or unexpired leases the bidder wishes to assume and includes an acknowledgment and representation that the bidder will assume the Debtor's obligations under the executory contracts and unexpired leases proposed to be assigned pursuant to the bid, contains full details of the bidder's proposal for the treatment of related cure costs, and identifies with particularity any executory contract or unexpired lease the assumption and assignment of which is a condition to closing;

(i)    it includes an acknowledgement and representation that the bidder: (i) has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Proposed Agreement; and (iv) is not entitled to any expense reimbursement or break-up fee in connection with its bid;

(j)    it includes evidence, in form and substance reasonably satisfactory to the Debtor,

6

of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Proposed Agreement;

(k)    it includes evidence of the Qualified Bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Qualified Bidder's ability to perform in the future the contracts and leases proposed in its bid to be assumed by the Debtor and assigned or subleased to the Qualified Bidder, in a form that will permit the immediate dissemination of such evidence to the counterparties to such contracts and leases;

(l)    it contains other information reasonably requested by the Debtor;

(m)    it exceeds the Stalking Horse Bid (as defined below), if applicable, by the amount set forth in the Stalking Horse Bid, plus any break-up fee and/or expense reimbursement that may be set forth in the Stalking Horse Bid, and a minimum overbid of $100,000;

(n)    it includes a copy of the proposed order to approve the Transaction by the Bankruptcy Court marked to show those amendments and modifications to the proposed order to approve the Transaction proposed by the Debtor; and

(o)    it pays, satisfies, or leaves unimpaired all secured creditors of the Debtor in a manner that is satisfactory to such creditors. For any bid that proposes a Transaction that does not pay off in full the debt of Hall and Ladera at closing and instead contemplates that the debt of Hall and Ladera will stay in effect after closing, such Qualified Bidder is encouraged to contact counsel for Hall and Ladera as soon as possible to negotiate potential treatment of the debt of Hall and Ladera that is acceptable to Hall and Ladera for purposes of submission in a bid: (i) counsel for Hall, Frank Wright at fwright@coatsrose.com; and (ii) counsel for Ladera, Jason Rios at jrios@ffwplaw.com.

Hall shall be permitted to credit bid the full amount of Hall's secured obligations arising under the Senior Loan Documents, including post-petition amounts paid or advanced by Hall to or on behalf of the Debtor pursuant to the Financing Stipulation and the Extended Stipulation (as such term is defined in the Sale Motion) (the "Hall Credit Bid Amount").

Ladera shall be permitted to credit bid the full amount of Ladera's secured obligations arising under the Junior Loan Documents (as such term is defined in the Sale Motion) (the "Ladera Credit Bid Amount").

Penta shall be permitted to credit bid the full lienable amount of any obligation of Penta calculated pursuant to NRS 108.237 (the "Penta Credit Bid Amount").

Other than as specifically set forth herein, Hall, Ladera, Penta, the Creditors Committee

and the Debtor reserve all rights regarding the lien amount, priority or validity, and each such party fully reserves all other rights, with respect to each other party's claims.

Hall, Ladera, and Penta (each, a "Secured Consent Party") shall each be deemed a "Qualified Bidder" and shall not be required to provide a Good Faith Deposit in connection with any bid, provided, however, that in the event that such Secured Consent Party is selected as the Successful Bidder or Back-Up Bidder and breaches the terms of its bid, the Debtor shall have the uncontested right to set off against such Secured Consent Party's claim the amount that otherwise would have been such Secured Consent Party's Good Faith Deposit.

The Debtor will determine, in its reasonable business judgment and with the consent of Consent Parties, whether to entertain bids for the Assets that do not conform to one or more of the requirements specified herein and deem such bids to be Qualified Bids.

The Debtor, together with the Consent Parties, shall determine, and the Debtor shall notify all Qualified Bidders in writing, as to whether or not any bids constitute Qualified Bids, subject to Court approval of such designation at the Pre-Auction Hearing, by no later than February 17, 2017, and shall provide any Qualified Bidder that has previously submitted a Qualified Bid with a copy of the Starting Bid no later than February 20, 2017.

### Aggregate Bids

The Debtors may choose, in consultation with the Creditors' Committee, to aggregate separate bids from unaffiliated persons to create one "Qualified Bid" from a "Qualified Bidder," including through bidding at the Auction for separate portions of the Assets to determine the highest and best Qualified Bid(s); provided that all bidders shall remain subject to the provisions of 11 U.S.C. § 363(n) regarding collusive bidding.

### Evaluation of Competing Bids

A Qualified Bid will be valued based upon several factors including, without limitation, items such as the purchase price and/or the net value (including assumed liabilities and the other obligations to be performed or assumed by the bidder) provided by such bid, the claims likely to be created by such bid in relation to other bids, the counterparties to such Transaction, the proposed revisions to the relevant Transaction documents, other factors affecting the speed, certainty and value of the Transaction (including any regulatory approvals required to close the Transaction), the assets included or excluded from the bid, the transition services required from the Debtor post-closing and any related restructuring costs, and the likelihood and timing of consummating such transactions, each as determined by the Debtor and the Consent Parties, in consultation with their respective advisors and the Parent, and its respective advisors.

### One or No Qualified Bids

If the Debtor receives only one Qualified Bid, the Auction shall be cancelled and the Debtor shall report the same to the Bankruptcy Court, and subject to requiring and obtaining approvals of the Bankruptcy Court and satisfaction of the conditions set forth in the Qualified Bidder's Proposed Agreement, upon consent of the Consent Parties, the Debtor shall promptly proceed to seek entry of the appropriate order approving the Transaction with such Qualified Bidder pursuant to the terms and conditions set forth in the Qualified Bidder's Proposed Agreement.

In addition, if only one Qualified Bid is received, the Debtor reserves the right to request that the Bankruptcy Court advance the date of the Transaction Approval Hearing (as defined below) and provide notice of such new date to those parties in interest entitled to notice thereof.

If the Debtor receives no Qualified Bids, the Auction shall be cancelled, the Debtor shall report the same to the Bankruptcy Court, and the Debtor shall withdraw or continue the Sale Motion.

### Pre-Auction Hearing

Pursuant to the Bidding Procedures Order, a status conference and hearing shall be held in the Bankruptcy Court on February 21, 2017, at 2:00 p.m. (the "Pre-Auction Hearing"), to approve the designation of Qualified Bidders and Qualified Bids and the determination of the Starting Bid under these Bidding Procedures and to consider any other issues that any party asserts, or the Court determines, should be resolved prior to the Auction, including all issues relating to the conduct of the Auction, which may include procedural rules governing the Auction, the qualification of any Potential Bidders or bids, as well as any party's right to credit bid.  Qualified Bidders are welcome to attend the Pre-Auction Hearing, but do not need to attend the Pre-Auction Hearing in person.

Any and all written objections and responses, and all supporting authorities, that any party wishes to have heard at the Pre-Auction Hearing must be: (a) in writing; (b) signed by counsel or attested to by the objecting or responding party; (c) in conformity with the Bankruptcy Rules and the Local Rules; (d) filed with the Court; and (e) served in accordance with the Local Rules so as to be received on or before 5:00 p.m. (prevailing Pacific Time) on February 16, 2017, provided, however, that any objections or responses solely with respect to the qualification of bids or the determination of the Starting Bid may be made at the Pre-Auction Hearing.

### Auction

If the Debtor receives more than one Qualified Bid, the Debtor will conduct an auction

(the "Auction") of the Assets at 10:00 a.m. on February 28, 2017, which Auction may be cancelled or adjourned. The Auction will be conducted under the supervision of the Honorable Gregg W. Zive in the United States Bankruptcy Court for the District of Nevada, 300 Booth Street, Reno, Nevada, at the C. Clifton Young Federal Building located at 300 Booth Street.  The Auction shall run in accordance with the following procedures:

(a)    Any party-in-interest may attend the Auction in person, but only Qualified Bidders will be entitled to make any subsequent bids at the Auction.

(b)    The Auction proceedings shall be transcribed by a Court reporter. Each Qualified Bidder shall be required to confirm on the record that it has not engaged in any collusion with respect to the bidding or the Transaction.

(c)    By no later than 24 hours prior to the Pre-Auction Hearing, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtor whether it intends to attend the Auction, with the understanding that the true identity of each Qualified Bidder at the Auction will be fully disclosed to all other Qualified Bidders at the Auction; provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until the end of the Irrevocable Period. At least one (1) day prior to the Pre-Auction Hearing, the Debtor will provide copies of the Qualified Bid or combination of Qualified Bids which the Debtor and Consent Parties agree is the highest or otherwise best offer, subject to Court approval of such determination at the Pre-Auction Hearing (the "Starting Bid") to all Qualified Bidders which have informed the Debtor of their intent to participate in the Auction.  In the event that there are multiple Qualified Bids for certain or all groupings of the Assets, the Debtor and the Consent Parties, in consultation with the Parent, may determine a Starting Bid for each grouping of the Assets and may conduct the Auction as separate auctions for each grouping of the Assets.

(d)    All Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction, with the understanding that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction; provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attend the Auction in person.

(e)    The Debtor, after consultation with its counsel, financial advisors, and the Consent Parties and their respective advisors present at the Auction, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are (i) not inconsistent with these Bidding Procedures, the Local Rules of Bankruptcy Practice of the United States District Court for the District of Nevada, the Bankruptcy Code, or any order of the Bankruptcy Court entered in connection herewith, and (ii) disclosed to each

Qualified Bidder at the Auction.

(f)    Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid") and (ii) the Debtor determines, with the consent of the Consent Parties and in consultation with their advisors present at the Auction, that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below). Each incremental bid at the Auction shall provide net value to the estate of at least $100,000 over the Starting Bid or the Leading Bid, as the case may be, provided that the Debtor, with the consent of the Consent Parties and in consultation with their advisors, shall retain the right to modify the increment requirements at the Auction after informing each participating Qualified Bidder. After the first round of bidding and between each subsequent round of bidding, the Debtor shall announce the bid or combination of bids (and the value of such bid(s)) that the Debtor and Consent Parties agree to be the highest or otherwise better offer (the "Leading Bid"). At each round of bidding, the Bankruptcy Court shall resolve any disputes among the Consent Parties as to the Leading Bid. A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid.

(g)    Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by Subsequent Bids, the Debtor will, at each round of bidding, give effect to any liabilities to be assumed by a Qualified Bidder and any additional costs which may be imposed on the Debtor.  For the avoidance of doubt, in submitting any Subsequent Bid, Hall shall be permitted to credit bid the full Hall Credit Bid Amount, Ladera shall be permitted to credit bid the full Ladera Credit Bid Amount, and Penta shall be permitted to credit bid the full Penta Credit Bid Amount.

Selection Of Successful Bid

      Prior to the conclusion of the Auction, the Debtor, in consultation with its advisors and the Consent Parties, the Parent, and their respective advisors present at the Auction, will (a) review each Qualified Bid and evaluate each Qualified Bid as set forth in the section titled "Evaluation of Competing Bids" herein, (b) identify, with the consent of the Consent Parties, the highest or otherwise best offer or offers for the Assets received at the Auction (one or more such bids, collectively the "Successful Bid" and the bidder(s) making such bid, collectively, the "Successful Bidder"), and (c) communicate to the Qualified Bidders the identity of the Successful Bidder, the Back-Up Bidder(s) (as defined below), if any, and the details of the Successful Bid and Back-Up Bid(s) (as defined below), if any. The determination of the Successful Bid and Back-Up Bid(s) by the Debtor, at the conclusion of the Auction, shall be final subject to approval by the Bankruptcy Court.  Each of the Consent Parties shall have consent rights with respect to the selection of the Successful Bid, provided, however, that in the event that the Debtor and all Consent Parties cannot agree on the selection of the Successful Bid (or, with respect to any other matter requiring the consent of the Consent Parties), the Debtor shall request that the Bankruptcy Court determine the Successful Bid at the Auction or at the Transaction Approval Hearing (as defined below) (or determine any other issue upon which the Debtor and Consent Parties cannot agree). For the avoidance of doubt, if a Secured Consent Party is a Qualified Bidder and/or submits a Qualified Bid, for as long as such Consent Party's bid is a potential candidate to be either the Successful Bid or Back-Up Bid, such Consent Party's consent or consultation shall not be required during the evaluation of bids for the purpose of determining whether such bids are Qualified Bids, during the Auction for the purpose of selecting the Starting Bid and Leading Bids, and in the selection of the Successful Bid and Back-Up Bid(s), as long as the Successful Bid and the Back Up Bid pay all claims of such Consent Party in full in cash or as otherwise agreed by such Consent Party.

      The Debtor will sell the Assets to or obtain financing from the Successful Bidder pursuant to the terms of the Successful Bid (or, under certain circumstances described herein, the Back-Up Bidder) upon the approval of such Successful Bid (or Back-Up Bidder if applicable) by the Bankruptcy Court at the Transaction Approval Hearing.

12

## Transaction Approval Hearing

The transaction approval hearing to authorize the Debtor to enter into one or more agreements with respect to the Successful Bid (the "Transaction Approval Hearing") will be held before the Honorable Judge Gregg W. Zive (or any substitute therefor) in the United States Bankruptcy Court for the District of Nevada, located in Reno, Nevada, at the C. Clifton Young Federal Building located at 300 Booth Street, on February 28, 2017, following the conclusion of the Auction. The Transaction Approval Hearing may be adjourned or rescheduled by the Debtor without further notice by an announcement of the adjourned date at the Transaction Approval Hearing. If the Debtor receives one Qualified Bid or does not receive any Qualified Bids, the Debtor shall proceed as set forth in the "One or No Qualified Bids" section above. If the Debtor receives one or more Qualified Bid(s), then, at the Transaction Approval Hearing, the Debtor will seek approval of the Successful Bid, and, at the Debtor's election with the consent of the Consent Parties, upon consultation with the Parent, one or more other of the other Qualified Bidders' Qualified Bids or highest and/or last Subsequent Bids (each such bid, a "Back-Up Bid" and, each such bidder, a "Back-Up Bidder") as set forth above. The Debtor's presentation to the Bankruptcy Court of the Successful Bid and, if applicable, the Back-Up Bids will not constitute the Debtor's acceptance of any such bids, which acceptance will only occur upon the approval of such bids by the Bankruptcy Court at the Transaction Approval Hearing.

Following approval of the Transaction with the Successful Bidder, if the Successful Bidder fails to consummate the Transaction for any reason, then the next highest and best Back-Up Bid will be deemed to be the Successful Bid. In such event, the Debtor will be authorized, but not directed, to effectuate a Transaction with the relevant Back-Up Bidder subject to the terms of the Back-Up Bid of such Back-Up Bidder without further order of the Bankruptcy Court. Any Back-Up Bid shall remain open until the earlier of: (a) the thirtieth (30th) calendar day following the conclusion of the Auction, unless, prior to such date, the Debtor has delivered written notice to a Back-Up Bidder that the transaction contemplated by the Successful Bid will not occur and the Debtor intends to consummate the transaction contemplated by the Back-Up Bid, in which case the Back-Up Bid shall be enforceable and shall govern and remain open for an additional thirty (30) days from the date of delivery of the written notice to allow the Back-Up Bid to close; or (b) the consummation of the Transaction to the Successful Bidder (the "Back-Up Bid Expiration Date").

## Good Faith Deposits

The Good Faith Deposits received by Qualified Bidders shall be held by the Debtor in a segregated trust account and shall not become property of the estate, except in the case of the Successful Bid or Back-Up Bid, as applicable, in which case the Good Faith Deposit shall be applied to the purchase price or financing amount to be paid by such bidder in accordance with the terms of such bidder's final bid at closing or shall become estate property if the Successful Bidder or Back-Up Bidder breaches the terms of the Successful Bid or Back-Up Bid, as

applicable.

The Good Faith Deposit of all Qualified Bidders other than the Successful Bidder and the Back-Up Bidder shall be returned to Qualified Bidders within one (1) Business Day after selection of the Successful Bidder or Back Up Bidder. The Good Faith Deposit of the Back-Up Bidder shall be returned one (1) Business Day after the earlier of (i) the closing of the Successful Bid; and (ii) the Back-Up Bid Expiration Date.

<u>Reservation Of Rights</u>

The Debtor, after consultation with its advisors and with the consent of the Consent Parties (other than any Consent Party that is a Qualified Bidder), the Parent, and their respective advisors, (a) may determine after each round of bidding at the Auction which Qualified Bid, if any, is the highest or otherwise best offer and the value thereof, (b) may reject, at any time, any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Transaction, or (iii) contrary to the best interests of the Debtor, its estate, and stakeholders as determined by the Debtor with the consent of the Consent Parties, and (c) except as otherwise specifically set forth herein, may modify the Bidding Procedures or impose, at or prior to the Auction, additional customary terms and conditions on the Transaction. The Debtor may, with the consent of the Consent Parties, upon consultation with the Parent and its advisors, enter into a stalking horse agreement at any time prior to the Bid Deadline (a "<u>Stalking Horse Bid</u>"), <u>provided</u>, <u>however</u>, that such stalking horse agreement shall be subject to higher and better offers pursuant to the Bidding Procedures. The Debtor may modify these Bidding Procedures to require that a Qualified Bid have a value that is greater than or equal to such minimum qualifying bid amount as may be jointly agreed upon by the Debtor and the Consent Parties, upon consultation with the Parent. By subsequent order of the Court sought on motion on notice to all parties in interest, the Bidding Procedures may be modified or suspended in favor of a negotiated transaction with a single purchaser or financing party on terms acceptable to the Debtor and all of the Consent Parties, upon consultation with the Parent and its advisors.

# EXHIBIT 2

PETER J. BENVENUTTI (CA Bar No. 60566 – *admitted Pro Hac Vice*)
JANE KIM (CA Bar No. 298192 – *admitted Pro Hac Vice*)
DARA L. SILVEIRA (CA Bar No. 274923 – *admitted Pro Hac Vice*)
**KELLER & BENVENUTTI LLP**
650 California Street, Suite 1900
San Francisco, California 94108
Telephone: (415) 364-6798
Facsimile: (415) 636-9251

JEFFREY L. HARTMAN (Bar No. 1607)
**HARTMAN & HARTMAN**
510 West Plumb Lane, Suite B
Reno, Nevada 89509
Telephone: (775) 324-2800
Facsimile: (775) 324-1818

Attorneys for Debtor
NEW CAL-NEVA LODGE, LLC

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No. 16-51282-gwz |
| NEW CAL-NEVA LODGE, LLC, | Chapter 11 |
| Debtor. | **NOTICE OF BIDDING PROCEDURES, AUCTION DATE, AND TRANSACTION APPROVAL HEARING** |

     **PLEASE TAKE NOTICE** that on December 2, 2016, New Cal-Neva Lodge, LLC, the debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor"), filed the Motion for Orders (I)(A) Authorizing and Approving Bidding Procedures, (B) Approving Notice Procedures and Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases, and (C) Setting a Date for the Transaction Approval Hearing, and (II) Authorizing and Approving (A) the Sale of Certain Assets Free and Clear of All Liens, Claims, Encumbrances and Interests or Financing Transaction and (B) the Assumption and Assignment of Certain Contracts (the "Motion")[1] (Docket No. 205). The Debtor seeks approval of, among other things, a sale of certain assets and assumption of certain liabilities of the Debtor to, or the financing transaction that maximizes value to the Debtor's estate with, a Successful Bidder or a

---

[1]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Back-Up Bidder (in each event, the "Transaction").

**PLEASE TAKE FURTHER NOTICE** that, on December ___, 2016, the court entered an order (the "Bidding Procedures Order") (Docket No. ___) approving, among other things, the Bidding Procedures requested in the Motion, which set forth the key dates and times relating to the Transaction. All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures. To the extent that there are any inconsistencies between the Bidding Procedures Order (including the Bidding Procedures) and the summary description of its terms and conditions contained in this Notice, the terms of the Bidding Procedures Order shall control.

**PLEASE TAKE FURTHER NOTICE** that a status conference and hearing will be held before the Honorable Judge Gregg W. Zive (or any substitute therefor) in the United States Bankruptcy Court for the District of Nevada, located in Reno, Nevada, at the C. Clifton Young Federal Building at 300 Booth Street (the "Courthouse"), on **February 21, 2017, at 2:00 p.m.** (the "Pre-Auction Hearing"), to approve the designation of Qualified Bids and the determination of the Starting Bid under the Bidding Procedures and to consider any other issues that any party asserts, or the Court determines, should be resolved prior to the Auction, including all issues relating to the conduct of the Auction, which may include procedural rules governing the Auction, the qualification of any Potential Bidders or bids, as well as any party's right to credit bid.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures, the Auction is scheduled for **10:00 a.m. (PT) on February 28, 2017**, to be conducted under the supervision of the Honorable Judge Gregg W. Zive (or any substitute therefor), at the Courthouse, which Auction may be cancelled or adjourned. Within twenty-four (24) hours following the conclusion of the Auction, the Debtor shall file a notice identifying the Successful Bidder(s) with the Court.

**PLEASE TAKE FURTHER NOTICE** that the Debtor will file a motion (the "Transaction Approval Motion") that seeks entry of an order (the "Transaction Order") that is expected to provide, among other things, that, if the Transaction is a sale, any Successful Bidder(s) will have no responsibility for, and the Assets will be sold free and clear of, any successor liability, including the following: (a) any liability or other obligation of the Debtor's estate or related to the Assets other than as expressly set forth in the Transaction Order; or (b) any claims against the Debtor, its estate, or any of its predecessors or affiliates. Except as expressly provided in any Transaction Order, the Successful Bidder shall have no liability whatsoever with respect to the Debtor's estate's (or its predecessors' or affiliates') respective businesses or operations or any of the Debtor's estate's (or their predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, joint employer, de facto merger or substantial continuity, whether known or unknown as of the closing date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtor or any obligations of the Debtor arising prior to the closing date, including, but not limited to, liabilities under any collective bargaining agreement or on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Assets prior to the closing of the Transaction.

2

**PLEASE TAKE FURTHER NOTICE** that an evidentiary hearing to approve the Transaction (the "Transaction Approval Hearing") will be held before the Honorable Judge Gregg W. Zive (or any substitute therefor) at the Courthouse, following the conclusion of the Auction. The Transaction Approval Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Transaction Approval Hearing.  Objections to the Transaction must state the legal and factual basis of such objection and may be orally supplemented at the Transaction Approval Hearing.  Any and all written objections to the Transaction, as well as all written objections and responses, and all supporting authorities, that any party wishes to have heard at the Pre-Auction Hearing, must be: (a) in writing; (b) signed by counsel or attested to by the objecting or responding party; (c) in conformity with the Bankruptcy Rules and the Local Rules; (d) filed with the Court; and (e) be served in accordance with the Local Rules so as to be received on or before **5:00 p.m. (prevailing Pacific Time) on February 16, 2017** (the "Transaction Objection Deadline"), provided, however, that any objections or responses solely with respect to the qualification of bids or the determination of the Starting Bid may be made at the Pre-Auction Hearing.

**PLEASE TAKE FURTHER NOTICE** that counterparties to contracts that may be assumed and assigned to the Successful Bidder will receive a separate notice regarding cure amounts and adequate assurance of future performance.

**PLEASE TAKE FURTHER NOTICE THAT ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE TRANSACTION ON OR BEFORE THE TRANSACTION OBJECTION DEADLINE IN ACCORDANCE WITH THIS NOTICE SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH TRANSACTION, INCLUDING WITH RESPECT TO THE TRANSFER OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS.**

**PLEASE TAKE FURTHER NOTICE** that this Notice is subject to the full terms and conditions of the Motion, the Transaction Approval Motion, Bidding Procedures Order, and Bidding Procedures, which Bidding Procedures Order shall control in the event of any conflict. The Debtor encourages parties in interest to review such documents in their entirety.  Any party that has not received a copy of the Motion or the Bidding Procedures Order that wishes to obtain a copy of the Motion or the Bidding Procedures Order, including all exhibits thereto, or that wishes to obtain a copy of the Transaction Approval Motion when it is filed, may make such a request in writing to Keller & Benvenutti LLP, Attn: Dara L. Silveira, Esq., 650 California Street, Suite 1900, San Francisco, CA 94108, or by e-mailing dsilveira@kellerbenvenutti.com.

Dated: December ____, 2016          **HARTMAN & HARTMAN**

By:    _____

        JEFFREY L. HARTMAN

        510 West Plumb Lane, Suite B

3

Reno, Nevada 89509

PETER J. BENVENUTTI (admitted *pro hac vice*)

JANE KIM (*pro hac vice* pending)

DARA L. SILVEIRA (admitted *pro hac vice*)
**KELLER & BENVENUTTI LLP**

650 California Street, Suite 1900

San Francisco, California 94108

*Attorneys for Debtor and Debtor-in-Possession*
*NEW CAL-NEVA LODGE, LLC*

4

# EXHIBIT 3

PETER J. BENVENUTTI (CA Bar No. 60566 – *admitted Pro Hac Vice*)
JANE KIM (CA Bar No. 298192 – *admitted Pro Hac Vice*)
DARA L. SILVEIRA (CA Bar No. 274923 – *admitted Pro Hac Vice*)
**KELLER & BENVENUTTI LLP**
650 California Street, Suite 1900
San Francisco, California 94108
Telephone: (415) 364-6798
Facsimile: (415) 636-9251

JEFFREY L. HARTMAN (Bar No. 1607)
**HARTMAN & HARTMAN**
510 West Plumb Lane, Suite B
Reno, Nevada 89509
Telephone: (775) 324-2800
Facsimile: (775) 324-1818

Attorneys for Debtor
NEW CAL-NEVA LODGE, LLC

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No. 16-51282-gwz |
| NEW CAL-NEVA LODGE, LLC, | Chapter 11 |
| Debtor. | **NOTICE TO COUNTERPARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTOR THAT MAY BE ASSUMED AND ASSIGNED** |

  **PLEASE TAKE NOTICE** that on December 2, 2016, New Cal-Neva Lodge, LLC, the debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor"), filed the Motion for Orders (I)(A) Authorizing and Approving Bidding Procedures, (B) Approving Notice Procedures and Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases, and (C) Setting a Date for the Transaction Approval Hearing, and (II) Authorizing and Approving (A) the Sale of Certain Assets Free and Clear of All Liens, Claims, Encumbrances and Interests or Financing Transaction and (B) the Assumption and Assignment of

Certain Contracts (the "Motion")[1] (Docket No. 205).

**PLEASE TAKE FURTHER NOTICE** that, on December ___, 2016, the court entered an order (the "Bidding Procedures Order") (Docket No. ___) approving, among other things, the Bidding Procedures requested in the Motion, which Bidding Procedures Order governs (i) proposed sale of certain assets and assumption of certain liabilities of the Debtor to, or the financing transaction that maximizes value to the Debtor's estate with, a Successful Bidder or a Back-Up Bidder (in each event, the "Transaction") and (ii) procedures for the assumption and assignment of certain of the Debtor's executory contracts and unexpired leases.

**PLEASE TAKE FURTHER NOTICE** that the Debtor will be filing a motion that seeks Court approval of the Transaction (the "Transaction Approval Motion"), including the assumption by the Debtor and assignment to the Successful Bidder(s) of certain executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code (the "Assumed Contracts"). Within twenty-four (24) hours following the conclusion of the Auction, the Debtor shall file a notice identifying the Successful Bidder(s) with the Court.  Any counterparty to an Assumed Contract that wishes to receive such notice by email or fax must provide their email address or fax number to Keller & Benvenutti LLP, Attn: Dara L. Silveira, Esq., by e-mailing dsilveira@kellerbenvenutti.com before the Auction.

**PLEASE TAKE FURTHER NOTICE** that a status conference and hearing shall be held before the Honorable Judge Gregg W. Zive (or any substitute therefor) in the United States Bankruptcy Court for the District of Nevada, located in Reno, Nevada, at the C. Clifton Young Federal Building at 300 Booth Street (the "Courthouse"), on **February 21, 2017, at 2:00 p.m.,** to consider any issues that any party asserts, or the Court determines, should be resolved prior to the Auction, which may include issues raised in any written objection to the Transaction Approval Motion or the Transaction, including any objection to assumption and assignment of an Assumed Contract.

**PLEASE TAKE FURTHER NOTICE** that the Auction is scheduled for **10:00 a.m. (PT) on February 28, 2017**, to be conducted under the supervision of the Honorable Judge Gregg W. Zive (or any substitute therefor), at the Courthouse.

**PLEASE TAKE FURTHER NOTICE** that an evidentiary hearing to approve the Transaction and authorize the assumption and assignment of the Assumed Contracts (the "Transaction Approval Hearing") will be held before the Honorable Judge Gregg W. Zive (or any substitute therefor) at the Courthouse, following the conclusion of the Auction. The Transaction Approval Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Transaction Approval Hearing.

**PLEASE TAKE FURTHER NOTICE** that, consistent with the Bidding Procedures Order, the Debtor may seek to assume an executory contract or unexpired lease to which you may be a party.  These are described on Exhibit A attached to this Notice.  The amount shown on

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2

<u>Exhibit A</u> hereto as the "Cure Amount" is the amount, if any, which the Debtor asserts is owed to cure any defaults existing under the listed contracts.

**PLEASE TAKE FURTHER NOTICE** that if you object for any reason to the assumption and/or assignment of an Assumed Contract (including to a Cure Amount), you must file the objection with the Court and serve upon the following parties it so that it is actually received by no later than **February 1, 2017 at 4:00 p.m., prevailing Pacific time**: (i) the Debtor: (a) New Cal-Neva Lodge, LLC, Attn: Robert Radovan, 1336 Oak Avenue Suite D, Saint Helena, CA 94574, Robert@CriswellRadovan.com; (b) Debtor's counsel: Keller & Benvenutti LLP, Attn: Peter J. Benvenutti, Esq. and Jane Kim, Esq., 650 California Street, Suite 1900, San Francisco, CA 94108, pbenvenutti@kellerbenvenutti.com, jkim@kellerbenvenutti.com; (c) Debtor's Nevada counsel: Hartman & Hartman, Attn: Jeffrey L. Hartman, Esq., 510 West Plumb Lane, Suite B, Reno, NV 89509, notices@bankruptcyreno.com; and (d) Debtor's broker: CBRE, Inc., Attn: Henry Bose and Mark McDermott, 101 California Street, 44th Floor, San Francisco, CA 94111, Henry.Bose@cbre.com, Mark.H.McDermott@cbre.com; (ii) the Parent: (a) Cal Neva Lodge, LLC, Attn: Robert Radovan, 1336 Oak Avenue Suite D, Saint Helena, CA 94574, Robert@CriswellRadovan.com; (b) Parent's Counsel: Jeffer Mangels Butler & Mitchell LLP, Attn: David M. Poitras, Esq. and David Sudeck, Esq., 1900 Avenue of the Stars, 7th Floor, Los Angeles, CA 90067; dpoitras@jmbm.com; dsudeck@jmbm.com; and (c) Parent's Nevada counsel: Hartman & Hartman, Attn: Jeffrey L. Hartman, Esq., 510 West Plumb Lane, Suite B, Reno, NV 89509, notices@bankruptcyreno.com; (iii) the Creditors' Committee: counsel for the Creditors' Committee: Pachulski Stang Ziehl & Jones LLP, Attn: John D. Fiero, Esq. and Shirley S. Cho, Esq., 150 California Street, 15th Floor, San Francisco, CA 94111, jfiero@pszjlaw.com, scho@pszjlaw.com; (iv) Hall: counsel for Hall: Coats Rose P.C., Attn: Frank J. Wright, Esq., 14755 Preston Road, Suite 600, Dallas, TX 75254, fwright@coatsrose.com; (v) Ladera: counsel for Ladera: Felderstein Fitzgerald Willoughby & Pascuzzi LLP, Attn: Jason E. Rios, Esq., 400 Capitol Mall, Suite 1750, Sacramento, CA 95814, jrios@ffwplaw.com; and (vi) PENTA: counsel for PENTA: Black & LoBello, Attn: Dawn M. Cica, Esq., 10777 W. Twain Avenue, Suite 300, Las Vegas, NV 89135, dcica@blacklobello.law (the "Notice Parties").

**PLEASE TAKE FURTHER NOTICE** that the Successful Bidder(s) shall be responsible for paying the Cure Amount of any Assumed Contract and for satisfying any requirements regarding adequate assurance of future performance that may be imposed under Sections 365(b) and (f) of the Bankruptcy Code in connection with the proposed assignment of any Assumed Contract.  The Court shall make its determinations concerning adequate assurance of future performance under the Assumed Contracts pursuant to 11 U.S.C. §§ 365(b) and (f) at the Transaction Approval Hearing.

**PLEASE TAKE FURTHER NOTICE** that if you object to the assumption and assignment of an Assumed Contract solely with respect to the Successful Bidder's ability to provide adequate assurance of future performance under the Assumed Contract, you may make such objection at the Transaction Approval Hearing.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Section 365(k) of the Bankruptcy Code, the Debtor and its estates shall be relieved of all liability accruing or arising after the effective date of assumption and assignment of the Assumed Contracts.

3

**PLEASE TAKE FURTHER NOTICE** that nothing contained herein shall obligate the Debtor or the Successful Bidder(s) to assume any Assumed Contracts or to pay any Cure Amount.

PLEASE TAKE FURTHER NOTICE THAT IF YOU DO NOT TIMELY FILE AND SERVE AN OBJECTION AS STATED ABOVE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE TRANSACTION APPROVAL MOTION WITH NO FURTHER NOTICE.

ANY COUNTERPARTY TO ANY ASSUMED CONTRACT WHO DOES NOT FILE A TIMELY OBJECTION IS DEEMED TO HAVE CONSENTED TO THE CURE AMOUNT AS LISTED.

4

1  Dated: December ____, 2016                    **HARTMAN & HARTMAN**

2                                         By:    _____

3                                                JEFFREY L. HARTMAN
                                                 510 West Plumb Lane, Suite B
4                                                Reno, Nevada 89509

5                                                *Proposed Local Counsel for*
                                                 *Debtor and Debtor-in-Possession*
6                                                *NEW CAL-NEVA LODGE, LLC*

7                                                PETER J. BENVENUTTI (admitted *pro hac vice*)
8                                                JANE KIM (*pro hac vice* pending)
                                                 DARA L. SILVEIRA (admitted *pro hac vice*)
9                                                **KELLER & BENVENUTTI LLP**
                                                 650 California Street, Suite 1900
10                                               San Francisco, California 94108

11
                                                 *Attorneys for Debtor and Debtor-in-Possession*
12                                               *NEW CAL-NEVA LODGE, LLC*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28