Courtney Miller O'Mara (NV Bar No. 10683)
comara@fclaw.com
FENNEMORE CRAIG, P.C.
300 E. 2ND Street, Suite 1510
Reno, NV 89501
Tel: (775) 788-2200    Fax: (775) 786-1177

John D. Fiero (admitted pro hac vice)
jfiero@pszjlaw.com
Shirley S. Cho (admitted pro hac vice)
scho@pszjlaw.com
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15TH Floor
San Francisco, CA 94111
Tel: (415) 263-7000    Fax: (415) 263-7010

Counsel to the Official Committee of Unsecured Creditors

Eric Goldberg (CA Bar No. 157544)
eric.goldberg@dlapiper.com
PAUL WASSGREN (NV Bar No. 9216)
paul.wassgren@dlapiper.com
DLA PIPER LLP (US)
2000 Avenue Of The Stars, Suite 400 North Tower
Los Angeles, CA 90067-4704
Tel: 310.595.3000    Fax: 310.595.3300

Counsel to Lawrence Investments, LLC

E-file: September 26, 2017

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>NEW CAL-NEVA LODGE, LLC,<br><br>Debtor. | Case No. 16-51282-gwz<br><br>Chapter 11<br><br>**MOTION TO APPROVE NON-MATERIAL PLAN MODIFICATION**<br><br>Hearing: To be announced<br>Time: To be announced |

The Official Committee of Unsecured Creditors (the "Committee") of New Cal-Neva, LLC (the "Debtor") and Lawrence Investments, LLC ("Lawrence," and together with the Committee, the "Proponents") hereby move the Court for an order permitting a non-material modification to the *First Amended Plan of Liquidation for New-Cal Neva Lodge, LLC Jointly Proposed by Lawrence Investments, LLC and the Official Committee of Unsecured Creditors dated August 16, 2017* (the

"Plan") to provide for a limited exculpation in furtherance of the final events necessary to effectuate a closing under the Plan.

This motion is based upon the accompanying memorandum of points and authorities, together with the declaration of John Fiero (the "Fiero Declaration") and any evidence or argument presented at the hearing.

WHEREFORE, the Plan Proponents pray for relief as follows:

1. Granting this Motion;

2. Specifically approving the inclusion of the following sentences in the confirmation order to be entered following the Court's September 14, 2017 hearing:

> In addition to the foregoing, the Debtor, the managers of the Debtor, all officers, directors, employees, or other authorized representatives of the Debtor who acted in such capacity during the pendency of the Debtor's chapter 11 case, any and all entities or persons on behalf of which any of the foregoing persons or entities act in furtherance of confirmation, implementation, or consummation of the Plan, including but not limited to Cal Neva, CR Cal Neva, LLC, CR Lake Tahoe, 9898 Lake, Robert Radovan and William Criswell, and the professionals employed by the Debtor pursuant to order of the Bankruptcy Court (collectively, the "Debtor Parties"), will neither have nor incur any liability to any person or entity for any actions in good faith taken or omitted to be taken in connection with the formulation, preparation, dissemination, implementation, Confirmation or consummation of (a) the Plan, including but not limited to all transfers of property made in contemplation of or as part of the Plan, and specifically, any and all actions taken pursuant to the Plan regarding the Fairwinds Estate and the transfer of the Fairwinds Estate, or (b) any agreement created or entered into in connection with the Plan or that were approved by the Court in connection with the Case, provided that, the foregoing shall not exonerate any of the Debtor Parties from any liability that results from an act or omission by him, her, or it, to the extent such act or omission is determined by a Final Order to have constituted gross negligence or willful misconduct.

3. For such other and further relief as the Court may deem just and proper.

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.** <u>Statement of Facts</u>

On July 28, 2016 (the "Petition Date"), the Debtor commenced its bankruptcy case by filing a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California, Santa Rosa Division (the "California Bankruptcy Court"), under Case No. 16-10648.

On August 7, 2017, the Proponents filed their *Plan of Liquidation for New Cal-Neva Lodge, LLC Jointly Proposed by Lawrence Investments, LLC and the Official Committee of Unsecured*

*Creditors Dated August 7, 2017* [Docket No. 761] and *Disclosure Statement* in support of the Plan [Docket No. 762].

On August 21, 2017, the Court entered the *Order Approving The Official Committee of Unsecured Creditors of New Cal-Neva Lodge, LLC and Lawrence Investments, LLC's Disclosure Statement, Setting Dates for Ballot Solicitation, and Confirmation* [Docket No. 809] (the "Disclosure Statement Order"). Also on August 21, 2017 the Proponents filed the Disclosure Statement for the First Amended Plan of Liquidation [Docket No. 802] and the addendum attaching exhibits to the Disclosure Statement [Docket No. 807] (collectively, the "Disclosure Statement") and the *First Amended Plan of Liquidation for New-Cal Neva Lodge, LLC Jointly Proposed* by the Plan Proponents [Docket No. 803] and the addendum attaching exhibits to the Plan [Docket No. 806] (collectively, the "Plan").[1]

On September 14, 2017, the Court held a Confirmation Hearing, at the conclusion of which the Court announced its decision to confirm the Plan. At the end of the hearing, however, the Proponents advised that Court that, subject to Court approval, they had agreed to a plan modification that would facilitate the closing of the sale contemplated by the Plan. Specifically, the Proponents agreed with the Debtor's request that the Plan be modified to include a limited exculpation provision that would permit the Debtor's principals to sign the documents necessary to implement the Plan, without incurring liability for executing the documents necessary to give effect to the Confirmation Order.

At the hearing, the Office of the United States Trustee objected to the proposed modification, and characterized any exculpation of the Debtor's principals as something that would require re-solicitation. The Court then suggested it would consider a plan modification to implement the proposed exculpation if it became the subject of a motion filed with the Court. The Proponents recently confirmed that, without a plan modification to provide for the exculpation, the Debtor's principals will not sign the documents necessary to implement the Plan, and instead will

---

[1] This brief will adopt the definitions contained in the Plan without re-definition here.

1  resign, thereby putting the entire Plan in jeopardy.  The Proponents bring this motion to avoid that
2  result.

3        **B.**      <u>The Exculpation Issue</u>

4  In an effort to make way for a smooth closing of the sale, the Plan Proponents included the
5  following text in the proposed form of confirmation order at Section 6:

> The Debtor is authorized and directed to take or to cause to be taken all company actions necessary or appropriate to consummate and implement the provisions of the Plan, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Court, including, without limitation, the transfer of the Purchased Assets to the Buyer without any requirement of further authorization by the stockholders, directors, managers, partners or members of the Debtor.  Following entry of this Confirmation Order, the appropriate officers, directors, members and managers of the Debtor are authorized and directed to execute and deliver the agreements, documents and instruments contemplated by the Plan, including the agreements, documents and instruments required to effectuate each and every one of the transactions set forth in the Plan.  After the Effective Date, the Plan Administrator is authorized to take all such actions on behalf of the Debtor.  By way of illustration, and not limitation, William Criswell, Robert Radovan and their affiliated LLCs, acting singly or jointly, are designated as the authorized signers for each of the Debtor, 9898 Lake, and CR Lake Tahoe, LLC, and Lawrence, First American Title Insurance Company as the designated escrow holder and title company under the Asset Purchase Agreement, and all other interested parties (the "Interested Parties") are entitled to accept and rely on documents or instruments executed by any one or more of them as having been duly authorized and executed by and on behalf of each such entity.  To the extent that any of the foregoing individuals or entities decline to sign any documents, the Court shall direct the Clerk of the Court to execute any document on behalf of the appropriate entity, and the Interested Parties shall be entitled to accept and rely on documents or instruments executed by the Clerk of the Court as having been duly authorized and executed by and on behalf of each such entity.

19  Under this provision, while the events necessary to cause the Plan to become effective are provided
20  for through explicit directions to Messrs. Criswell and Radovan, there is also an alternative
21  mechanism provided for whereby the Court may direct the Clerk of the Court to perform all
22  necessary corporate acts and title transfer steps (i.e., execute documents) if the Debtor's principals
23  decline to do so.[2]

24  The plan modification being proposed is a very limited exculpation provision that will
25  exculpate the Debtor Parties <u>only</u> for actions taken in connection with the closing of this
26  transaction, and <u>only</u> to the extent provided by any Court Order.  This modification will *not* excuse

---

[2]  This provision is consistent with Federal Rule of Bankruptcy Procedure 7070.

the Debtor Parties from any liability for any other actions taken <u>during</u> the bankruptcy case, nor will the proposed exculpation provision excuse any Debtor Parties from liability for actions taken <u>prior</u> to the Proponents' filing of the Plan on August 7, 2017.

Messrs. William Criswell and Robert Radovan) have indicated that, in an effort to escape any potential liability that might follow from complying with any Confirmation Order by execution of the documents necessary to close the sale to the Buyer, they may resign their positions before the Plan becomes effective. Indeed, they have stated through counsel that, unless the Plan is modified to include a satisfactory exculpation provision, they are unwilling to execute the various documents required to implement the Plan because they are concerned about attempts to impose liability upon them for such actions.

The Plan Proponents further understand that the Debtor's principals would be willing to stay on and perform the acts required by the Plan, so long as an appropriate exculpation was provided. The exculpation that the Plan Proponents are contemplating includes terms that are narrowly tailored to make sure that it offers a layer of protection for acts taken pursuant to court orders in the chapter 11 case (as well as the corporate machinations necessary to transfer title to the real estate as required by the Asset Purchase Agreement), but goes no further. Specifically, the provision the Plan Proponents seek to include in the confirmation order as a Plan modification reads as follows:

> In addition to the foregoing, the Debtor, the managers of the Debtor, all officers, directors, employees, or other authorized representatives of the Debtor who acted in such capacity during the pendency of the Debtor's chapter 11 case, any and all entities or persons on behalf of which any of the foregoing persons or entities act in furtherance of confirmation, implementation, or consummation of the Plan, including but not limited to Cal Neva, CR Cal Neva, LLC, CR Lake Tahoe, 9898 Lake, Robert Radovan and William Criswell, and the professionals employed by the Debtor pursuant to order of the Bankruptcy Court (collectively, the "Debtor Parties"), will neither have nor incur any liability to any person or entity for any actions in good faith taken or omitted to be taken in connection with the formulation, preparation, dissemination, implementation, Confirmation or consummation of (a) the Plan, including but not limited to all transfers of property made in contemplation of or as part of the Plan, and specifically, any and all actions taken pursuant to the Plan regarding the Fairwinds Estate and the transfer of the Fairwinds Estate, or (b) any agreement created or entered into in connection with the Plan or that were approved by the Court in connection with the Case, provided that, the foregoing shall not exonerate any of the Debtor Parties from any liability that results from an act or omission by him, her, or it, to the extent such act or omission is determined by a Final Order to have constituted gross negligence or willful misconduct.

This narrowly-tailored exculpation provision will *not* excuse the Debtor Parties from liability (a) arising from events that took place prior to the bankruptcy case, or (b) arising from actions taken during the bankruptcy case prior to the Plan Proponents filing of the Plan on August 7, 2017. In other words, the exculpation is designed to allow the sale to close, and allow the Plan to become effective, while at the same time not exposing the Debtor Parties to liability for acting in accordance with orders of this Court; nothing more.

### C.     The Plan Modification is Permissibly Non-Material.

Bankruptcy Code section 1127(b) states that, so long as any post-confirmation/pre-consummation modification is consistent with Bankruptcy Code section 1125, then in such case:

> [t]he proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title.

Thus, Section 1127(b) sets forth certain limitations on postconfirmation plan modifications, and, thus, "reinforces the principle of finality by preserving the rights bought and paid for under the plan." *In re Rickel & Assocs., Inc.*, 260 B.R. 673, 677 (Bankr. S.D.N.Y. 2001) (collecting cases). This notion is a longstanding one, as section 1127(b) was derived from sections 222 and 229(c) of the old Bankruptcy Act. *See Legend Radio Grp., Inc. v. Sutherland*, 211 F.3d 1265 (4th Cir. 2000). Indeed, as the Honorable Learned Hand once said:

> [T]he court may never under the guise of 'alteration' or 'modification' substitute an entirely new 'plan' in place of the original; although what is a line between a substitute and an 'alteration' or a 'modification' is necessarily left at large. . . . The question is one of discretion, though of a discretion which should be sparingly exercised, . . . unless the circumstances peremptorily demand it. . . . [I]t is often exceedingly difficult for a bankruptcy court to resist the importunities, usually unopposed, of those who wish to keep the 'revived debtor' indefinitely beneath its aegis; and our review of a discretion, which we may think to have been unwisely exercised, is not a very effective remedy. We can do no more than declare, for whatever weight it may have, that we deem the long delay which so often occurs between the order of 'confirmation' and the 'final order' a major abuse, and that a judge who superintends such a proceeding should feel himself charged with an affirmative duty to insist upon its early conclusion.

*Prudence-Bonds Corp. v. City Bank Farmers Trust Co.*, 186 F.2d 525, 528 (2d Cir.1951).

The Bankruptcy Code does not define "modification," and courts determine what constitutes a "modification" on a case-by-case basis. *In re Boylan Int'l, Ltd.*, 452 B.R. 43, 47 (Bankr. S.D.N.Y. 2011). Section 1127(b) provides that only the plan proponent or the reorganized debtor may propose a postconfirmation plan modification. *See* 11 U.S.C. § 1127(b); *see also In re Sea Island Co.*, 486 B.R. 559, 570 (S.D. Ga. 2013) (liquidation trustee was not a plan proponent and, thus, section 1127(b) would prohibit him from making a "modification" to the plan); *In re Calpine Corp.*, No. 05-60200 (BRL), 2008 WL 207841, at *6 (Bankr. S.D.N.Y. Jan. 24, 2008) (objecting shareholders were not proponents of confirmed plan and were not authorized under section 1127(b) to modify the confirmed plan). This limitation is even imposed on bankruptcy courts, which "cannot on [their] own modify a confirmed plan." *In re Boylan Int'l, Ltd.*, 452 B.R. at 48 (citing *In re Planet Hollywood Int'l*, 274 B.R. 391, 400 (Bankr. D. Del. 2001)); *see also Goodman v. Phillip R. Curtis Enters., Inc. (In re Goodman)*, 809 F.2d 228 (4th Cir. 1987) (bankruptcy court could not *sua sponte* modify plan, modification had to be sought by proper party under section 1127(b)).

Any postconfirmation modification must also comply with sections 1122, 1123, and 1125, and, after notice and a hearing, must be confirmed by the court pursuant to section 1129. *See In re Downtown Inv. Club III*, 89 B.R. 59, 65 (B.A.P. 9th Cir. 1988) (material modification is improper where debtor did not give affected creditor notice and did not comply with sections 1125 and 1129). These limitations on postconfirmation plan modifications essentially seek to preserve certain protections afforded to creditors by the Bankruptcy Code, and prevent plan proponents and reorganized debtors from making modifications that could not have been approved in the originally confirmed plan.

The question here is whether the "circumstances warrant" the proposed modification regarding the limited exculpation of the Debtor Parties. Equitable considerations typically guide the court in its determination of whether circumstances warrant approval of a proposed modification, and some courts have concluded that where there were unforeseen changed circumstances that prompted the modification, such a modification may be permissible. For example, courts have determined that circumstances warranted postconfirmation modification where (1) a debtor farmer could no longer comply with a payment schedule set forth in the plan

because the government changed a farm program upon which the debtor relied, *In re Olson*, 861 F.2d 188 (8th Cir. 1988), (2) the reorganized debtor, due to no fault of its own, suffered a serious loss of revenue that rendered the plan unworkable, *In re Gene Dunavant & Son Dairy*, 75 B.R. 328 (Bankr. M.D. Tenn. 1987), and (3) there was unforeseen and protracted trial and appellate litigation that prevented the liquidating trustee from prosecuting a malpractice claim that was the debtor's primary asset, *In re Boylan Int'l, Ltd.*, 452 B.R. 43 (Bankr. S.D.N.Y. 2011).

This is that sort of case. The Plan Proponents did not foresee that, in light of potential litigation threats by the parties that objected to the Plan, the Debtor Parties might actually resign their positions and hamper implementation of the Plan. This is a new development that was first made manifest during the afternoon of the confirmation hearing. So the question becomes : (1) do "the circumstances warrant" the proposed additional exculpation; and (2) will the adequate information requirements of Bankruptcy Code section 1125 remain satisfied if the Plan is so augmented by an additional provision in the confirmation order?

### 1. The Circumstances Warrant the Additional Exculpation

As discussed above, the reluctance of the Debtor Parties to remain in their corporate offices and effectuate the Plan was not foreseen, nor was it frankly foreseeable given its appearance as an issue on the day of confirmation. The Plan Proponents have attempted to "work around" this impediment by including in the proposed Confirmation Order language by which the Court may direct the Clerk of the Court to take all necessary actions to make the Plan effective pursuant to Federal Rule of Bankruptcy Procedure 7070, i.e, to sign that documents that the Debtor Parties refuse to sign without exculpation. But in the event the Court is unwilling to approve this language, and so direct the Clerk of the Court to sign the implementing documents, then the proposed modification and additional exculpation will be necessary.

Simply put, this is a situation in which equitable considerations favor the Proponents. For instance, it is beyond argument that the absence of corporate officers was unforeseeable when the Plan was filed. Indeed, at that time, it was still possible they would file their own plan with their own plan sponsor. Moreover, any balancing of the harms analysis can only lead to the conclusion that equity will be done by the Plan modification. There is no real downside to any party in interest

because (a) pre-bankruptcy liability to any and all creditors is carved out, as is post-bankruptcy liability for acts performed without Court authority; and (b) the modification merely makes possible what the Court has already approved: a cram down plan pursuant to Bankruptcy Code section 1129(b)(2)(B)(ii) over the objections of Hall and Paye.

Conversely, , there will be tremendous harm if the modification is not permitted. As stated above, the Debtor Parties will not sign the implementing documents without the requested exculpation. Accordingly, unless the Court either (a) approves the modification, or (b) directs the Clerk of the Court to sig the transactional documents necessary to implement the Plan, the sale will not close, the Plan will not become effective, and the largest cash bid ever offered for the Debtor's assets will effectively be rejected. In short, without the requested modification, all creditors in this case, including secured and administrative creditors, will suffer great harm.

### 2. Bankruptcy Code Section 1125 is Not Impacted by the Modification

The Office of the United States Trustee objected at the confirmation hearing that no additional exculpation could ever be accomplished without re- solicitation. The proponents submit that re-solicitation is both unnecessary and impractical. It is unnecessary because there is no credible argument that the inclusion of this very limited exculpation provision would change a single vote for any class. It is impractical because if the Court were to require re-solicitation, the deadlines in the Asset Purchase Agreement would expire in the meanwhile, and the sale that forms the basis of the Plan (where Lawrence was the only bidder) would disappear. In other words, there would no longer be any plan to solicit votes on.

Finally, given that there is likely no harm that could ever flow from acts performed pursuant to Bankruptcy Court order, or acts designed to consummate the confirmed Plan, the Court should conclude that re-solicitation would be a waste of time and effort in a case where (a) Lawrence advised the Court at the confirmation hearing that any offer made after the failure of the Plan would be substantially lower than the one put forward at the hearing ($38 million "all in"), and (b) administrative professionals have already been forced to agree to a steep discount in order to keep the chapter 11 case going.

**D.  CONCLUSION**

For all the foregoing reasons, the Plan Proponents request that in addition to such other and further relief as is just and proper under the circumstances, the Court grant the motion, including in the confirmation order a Plan modification that reads as follows:

> In addition to the foregoing, the Debtor, the managers of the Debtor, all officers, directors, employees, or other authorized representatives of the Debtor who acted in such capacity during the pendency of the Debtor's chapter 11 case, any and all entities or persons on behalf of which any of the foregoing persons or entities act in furtherance of confirmation, implementation, or consummation of the Plan, including but not limited to Cal Neva, CR Cal Neva, LLC, CR Lake Tahoe, 9898 Lake, Robert Radovan and William Criswell, and the professionals employed by the Debtor pursuant to order of the Bankruptcy Court (collectively, the "Debtor Parties"), will neither have nor incur any liability to any person or entity for any actions in good faith taken or omitted to be taken in connection with the formulation, preparation, dissemination, implementation, Confirmation or consummation of (a) the Plan, including but not limited to all transfers of property made in contemplation of or as part of the Plan, and specifically, any and all actions taken pursuant to the Plan regarding the Fairwinds Estate and the transfer of the Fairwinds Estate, or (b) any agreement created or entered into in connection with the Plan or that were approved by the Court in connection with the Case, provided that, the foregoing shall not exonerate any of the Debtor Parties from any liability that results from an act or omission by him, her, or it, to the extent such act or omission is determined by a Final Order to have constituted gross negligence or willful misconduct.

Dated:  September 26, 2017        */s/ Courtney Miller O'Mara*
                                  Thomas H. Fell (NV Bar No. 3717)
                                  Courtney Miller O'Mara (NV Bar No. 10683)
                                  FENNEMORE CRAIG, P.C.
                                  300 E. 2nd Street
                                  Reno, NV 89501
                                  Telephone:  (775) 788-2200
                                  Facsimile:  (775) 786-1177
                                  Email:       tfell@fclaw.com;
                                               comara@fclaw.com

                                  John D. Fiero (*admitted pro hac vice*)
                                  Shirley S. Cho (*admitted pro hac vice*)
                                  PACHULSKI STANG ZIEHL & JONES LLP
                                  150 California Street, 15th Floor
                                  San Francisco, CA 94111
                                  Telephone:  (415) 263-7000
                                  Facsimile:  (415) 263-7010
                                  E-mail:      jfiero@pszjlaw.com;
                                               scho@pszjlaw.com

                                  Counsel for the Official
                                  Committee of Unsecured Creditors