# Exhibit T

**SECOND ADDENDUM TO
AGREEMENT OF SALE AND PURCHASE
AND JOINT ESCROW INSTRUCTIONS**

THIS SECOND ADDENDUM TO AGREEMENT OF SALE AND PURCHASE AND JOINT ESCROW INSTRUCTIONS ("**Second Addendum**") is dated as of December ___, 2017, by and between NEW CAL-NEVA LODGE, LLC, a Nevada limited liability company ( "**Seller**") and LAWRENCE INVESTMENTS, LLC, a California limited liability company ("**Purchaser**"), and amends that certain Agreement of Sale and Purchase and Joint Escrow Instructions dated October ___, 2017 by and between Seller and Purchaser (the "**Original Agreement**"), as amended by that certain Addendum to Agreement of Sale and Purchase and Joint Escrow Instructions dated October ___, 2017 (the "**First Addendum**" and collectively with the Original Agreement, as the "**Agreement**") relating to that certain real and personal property more particularly described in the Agreement.

1. <u>Defined Terms</u>. Unless otherwise defined in this Addendum, all defined terms shall have the meaning set forth in the Agreement.

2. <u>Modifications to Defined Terms</u>. Notwithstanding anything to the contrary in Section 1.01 or elsewhere in the Agreement, the following terms defined in the Agreement are hereby modified or if not already defined, defined herein as follows:

    (a) "**Furnishings**" shall mean all fixtures, furniture, furnishings, fittings, equipment, computers, machinery, apparatus, appliances, vehicles, if any, and other articles of personal property located on the Property that are being used in connection with any part of the Hotel or the Fairwinds House or held in storage at any location for use (or future use) on the Property in connection with any part of the Hotel or the Fairwinds House, and that is owned or leased by the Seller or any of its Affiliates; provided that, Furnishings shall not include (i) the furnishings, fixtures and equipment stored by or on behalf of Seller at the warehouse located in Sparks, Nevada (the "**Cal-Neva FF&E**") or (ii) the un-affixed furnishings and personal property in the Fairwinds House that are timely removed from the Fairwinds House by Paul and Evy Paye, LLC ("**Paye**") prior to the Closing Date.

3. <u>Cure Amounts and Plan Confirmation Expense Payment</u>. Section 2.01(c) of the Original Agreement as modified by Section 7 of the First Addendum is hereby amended and restated in its entirety to read as follows:

    "(c) In addition to the Purchase Price, and only if the Closing is occurring subject to all of the terms and conditions of this Agreement, Purchaser shall concurrently with the Closing pay to Escrow Agent for disbursement upon or after the Closing an amount equal to Two Million Three Hundred Fifty-Five Thousand and 00/100 Dollars ($2,355,000.00) (the "**Plan Payment**") <u>less</u> the Cure Amounts (such net sum, the "**Plan Confirmation Expense Payment**"). The Plan Confirmation Expense Payment shall be paid by Escrow Agent in accordance with one or more orders issued by the Bankruptcy Court."

4. <u>Allocation of Purchase Price</u>.  Sections 9(a), 9(b) and 9(c) of the First Addendum is hereby replaced in their entirety by the following:

"9. <u>Allocation of Purchase Price</u>.

(a) <u>For Transfer and Property Tax Purposes</u>.  For the sole purpose of recording the Deeds at the Closing and providing the required information to the applicable counties where the Deeds will be recorded, Seller and Purchaser hereby agree that the Purchase Price, the Plan Payment and the Fairwinds Pay-Off (as defined below) shall be allocated as follows:

| <u>Value</u> | <u>Portion of Property</u> |
|---|---|
| $8,000,000.00 | Real Property in California (other than Fairwinds House) |
| $28,500,000.00 | Real Property in Nevada |
| $1,155,000.00, plus the pay-off amount of the debt secured by the Fairwinds Mortgage as of the Closing (the "**Fairwinds Pay-Off**" and collectively with the $1,155,000, the "**Fairwinds Amount**") | Real Property consisting only of Fairwinds House |
| $500,000.00 | All Property other than the Real Property, including good will" |

(b) <u>For Income Tax Reporting Purposes</u>.  Unless either Seller or Purchaser elect to have a Property Appraisal (as defined below in Section 9(c)) conducted and completed on or prior to December 31, 2018 (the "**Outside Appraisal Date**") in accordance with Section 9(c) hereof, Seller and Purchaser hereby agree upon, an allocation of the Purchase Price, the Plan Payment and the Fairwinds Pay-Off for federal income tax purposes under Section 1060 of the Internal Revenue Code of 1986, as amended, as follows:

| Value | Portion of Property |
|---|---|
| $500,000.00 | The Improvements located on the Real Property in California (other than Fairwinds House) |
| $7,500,000.00 | The Land portion of the Real Property in California (other than Fairwinds House) |
| $13,000,000.00 | The Improvements on the Real Property in Nevada |
| $15,500,000.00 | The Land portion of the Real Property in Nevada |
| 30% of the Fairwinds Amount | The Improvements located on the Real Property consisting only of Fairwinds House |
| 70% of the Fairwinds Amount | The Land portion of the Fairwinds House |
| $475,000.00 | All Property other than the Real Property, except for good will |
| $25,000.00 | Goodwill |

(c) <u>Appraisal Process</u>. If either Seller or Purchaser elects to obtain an appraisal of the different portions of the Property (a "**Property Appraisal**") by a qualified appraiser that has experience appraising property in the Lake Tahoe area, such election shall be made by written notice to the other party (the "**Non-Electing Party**") on or before June 30, 2018. The first party to send such a notice (the "**Electing Party**") shall have until the Outside Appraisal Date to complete the Property Appraisal and provide a copy of same to the Non-Electing Party. The Electing Party shall bear all costs of the appraisal. If the Electing Party fails to complete the Property Appraisal and provide a copy to the Non-Electing Party by the Outside Appraisal Date, then the parties shall use the allocation figures set forth in Section 9(b). If the Electing Party obtains the Property Appraisal by the Outside Appraisal Date, then the Electing Party shall promptly deliver such Property Appraisal to the Non-Electing Party and the allocation of the Purchase Price set forth in such Property Appraisal shall be used by both parties for federal income tax purposes under Section 1060 of the Internal Revenue Code of 1986, as amended. No party shall file any return (or treat any item or items thereon) nor make any other statement or submission to the IRS, any comparable state agency, or any court or other judicial or administrative body, or otherwise account for the Property, which return, treatment, item, statement, submission or accounting is inconsistent in whole or in part with the allocation set forth in this Section 9."

5. <u>Additional Conditions Precedent to Purchaser's Obligations</u>. Section 13 of the First Addendum is hereby replaced in its entirety by the following:

"13. <u>Additional Conditions Precedent to Purchaser's Obligations</u>. In addition to any conditions precedent to Purchaser's obligations specifically stated in Section 5.05 or elsewhere in the Agreement, Purchaser's obligations under the Agreement are conditioned upon the satisfaction of the following conditions as of the Scheduled Closing Date:

(a) All warranties obtained in connection with the patching of the shingle roofing and applying a membrane on the low slope roof of the casino/kitchen area of the Improvements which was completed within the last three (3) months of this Second Addendum shall have been assigned to Purchaser at the Closing.

(b) Seller shall deliver possession of the Real Property to Purchaser at the Closing free and clear of all occupants and tenants, including, but not limited to the caretaker of the Fairwinds House.

(c) Title to the Real Property (including the Fairwinds House) shall be conveyed to Purchaser subject only to the Permitted Exceptions, including for the Fairwinds House, the Fairwinds Mortgage, and the Fairwinds House shall be conveyed to Purchaser free and clear of (i) any claims arising out of that certain Exchange Agreement concerning the Fairwinds House by Paye or their successors or assigns, and (ii) any lien or interest claimed by Hall CA-NV, LLC ("**Hall**").

(d) Hall has provided written consent to the transfer of the Fairwinds House and the Furnishings associated with the Fairwinds House to Purchaser in accordance with this Agreement and the Sale Order.

(e) Ladera Development, LLC shall not have filed an objection with the Bankruptcy Court to the Sale Order or the Settlement Order.

6. <u>Sale Order Condition</u>. Section 5.05(d) of the Original Agreement as amended by Section 14 of the First Addendum is hereby replaced in its entirety by the following:

"(d) No later than December 22, 2017, or such later date as may be agreed to in writing by Purchaser, the Bankruptcy Court shall have entered (a) the Sale Order, and (b) an order granting in full the Joint Motion To Approve Compromise And Settlement Agreement And Dismissal Under FRCP 7041, which was filed in the Bankruptcy Case on December 15, 2017 ("Settlement Order"), and neither the Sale Order nor the Settlement Order shall be stayed or subject to appeal as of the Closing Date, and the Sale Order and Settlement Order shall be Final Orders as of the Closing Date."

7. <u>Failure of a Condition Precedent to Purchaser's Obligations</u>. In the paragraph that immediately follows existing Section 5.05(d) of the Original Agreement, the phrase "(or if the Sale Order has not been entered on or before August 21, 2017)" shall be replaced with "(or if the

Sale Order and Settlement Order have not both been entered on or before December 22, 2017, or such later date as may be agreed to in writing by Purchaser)".

8. <u>Scheduled Closing Date</u>. Section 7.1 of the Original Agreement as modified by Section 15 of the First Addendum is hereby replaced in its entirety by the following:

"7.01 <u>Scheduled Closing Date</u>. Provided that this Agreement has not been terminated pursuant to the provisions of this Agreement, Seller and Purchaser agree that the Closing Date shall occur at the Title Company's offices or by mail on or before January 10, 2018 (the "**Scheduled Closing Date**"); provided that if the Scheduled Closing Date has not occurred because one or more of the conditions to Purchaser's obligation to close under this Agreement has not occurred, then Purchaser shall have the right to extend both the Scheduled Closing Date and the Closing Date by providing Seller written notice of such election to extend on or before the then Scheduled Closing Date. Purchaser, in its sole discretion, may waive the requirement that Sale Order and Settlement Order be Final Orders as of the Closing Date to facilitate a Closing prior to the Schedule Closing Date.

9. <u>U.S. Trustee's Fee</u>. The parties acknowledge that the U.S. Trustee's fee in connection with the administration of the Sale Order and Settlement Order will increase if the Closing does not occur prior to January 1, 2018 and the Plan Payment by Purchaser will not cover this increased fee amount (the "**Increased Trustee's Fee**"). Accordingly, if the Closing occurs on or after January 1, 2018, the Increased Trustee's Fee shall be paid out of the proceeds of the Purchase Price.

10. <u>Agreement</u>. Except as specifically set forth in this Second Addendum, the Agreement remains unmodified and in full force and effect.

11. <u>Counterparts</u>. This Second Addendum may be executed in any number of identical counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed to be one and the same instrument when each party has signed one such counterpart. Counterparts may be delivered via facsimile, electronic mail (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

IN WITNESS WHEREOF, the parties hereto have executed this Second Addendum as of the date first above written.

| SELLER: | PURCHASER: |
|---|---|
| NEW CAL-NEVA LODGE, LLC, <br> a Nevada limited liability company | LAWRENCE INVESTMENTS, LLC, <br> a California limited liability company |
| By: <br> Name: <br> Title: | By: <br> Name: <br> Title: |

**APPROVAL BY ASSIGNEES**

Pursuant to Section 21 of the First Addendum, Lawrence Investments LLC has assigned its rights as Purchaser under the Agreement to: (a) SF Pacific, LLC, a California limited liability company ("**SF Pacific**"), which will be taking title to the Fairwinds Property (as defined in the Agreement), and (b) CN Hotel Holdings, LLC, a California limited liability company ("**CN Hotel**" and collectively with SF Pacific, as "**Assignees**"), which will be taking title to the Hotel Property (as defined in the Agreement). Each of the Assignees is an Affiliate (as defined in the Agreement) of Purchaser and authorized Purchaser to act on their behalf in connection with this Second Addendum.

The Assignees hereby consent, approve and agreed to be bound by the terms and conditions of this Second Addendum.

| SF PACIFIC: | CN HOTEL: |
|---|---|
| SF PACIFIC, LLC, <br> a California limited liability company | CN HOTEL HOLDINGS, LLC, <br> a California limited liability company |
| By: <br> Name: <br> Title: | By: <br> Name: <br> Title: |

WEST\279815310.3
340864- 000010

6