_____
Honorable Gregg W. Zive
United States Bankruptcy Judge

Entered on Docket
December 22, 2017

**DLA PIPER LLP (US)**
ERIC GOLDBERG (CA Bar No. 157544)
eric.goldberg@dlapiper.com
PAUL WASSGREN (NV Bar No. 9216)
paul.wassgren@dlapiper.com
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4704
Tel: 310.595.3000
Fax: 310.595.3300

Attorneys for
LAWRENCE INVESTMENTS, LLC

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>NEW CAL-NEVA LODGE, LLC,<br><br>Debtor. | Case No. 16-51282-gwz<br><br>Chapter 11<br><br>**ORDER APPROVING NON-MATERIAL MODIFICATIONS TO FIRST AMENDED PLAN OF LIQUIDATION FOR NEW CAL-NEVA LODGE, LLC JOINTLY PROPOSED BY LAWRENCE INVESTMENTS, LLC AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS DATED AUGUST 16, 2017, AS MODIFIED**<br><br>Hearing Date: December 21, 2017<br>Hearing Time: 2:00 p.m. |

On December 21, 2017 at 2:00 p.m., this Court held a hearing on shortened notice to consider the *Joint Emergency Motion For Order Approving Non-Material Modifications To Confirmed Plan And Related Relief* (Docket No. 1036, the "Modification Motion") filed by the Official Committee of Unsecured Creditors ("Committee") and Lawrence Investments, LLC ("Lawrence, and together with the Committee, the "Proponents").

Pursuant to the Modification Motion, the Proponents requested that the Court approve certain modifications to the *First Amended Plan of Liquidation Jointly Proposed by Lawrence Investments, LLC and the Official Committee of Unsecured Creditors Dated August 16, 2017, As Modified* (the "Confirmed Plan").[1]  On October 16, 2017, the Court entered (a) the *Order Confirming First Amended Plan Of Reorganization For New Cal Neva Lodge, LLC Jointly Proposed By Lawrence Investments, LLC And The Official Committee of Unsecured Creditors Dated August 16, 2017, As Modified Hereby* (Docket No. 966, the "Confirmation Order"); and (b) the *Findings of Fact and Conclusions of Law in Support of Order Confirming First Amended Plan of Liquidation Jointly Proposed by Lawrence Investments, LLC and the Official Committee of Unsecured Creditors Dated August 16, 2017* (Docket No. 965, the "Findings and Conclusions").  However, the Confirmed Plan has not been consummated, substantially or otherwise, due to the existence of a stay entered by the District Court ("Stay") after an appeal of the Confirmation Order was taken by Hall CA-NV, LLC ("Hall").  The Hall appeal is referred to herein collectively with the consolidated appeal of the Confirmation Order and Findings and Conclusions taken by Paul and Evy Paye, LLC ("Paye") as the "Appeals."  In connection with the Modification Motion, the Court considered the pleadings in the record filed in support of the Modification Motion, Ladera's Limited Response to the Modification Motion (Docket No. 1067, the "Ladera Response"), the Confirmed Plan, the Findings and Conclusions, the fact that no party objected to the Modification Motion, the arguments and representations of counsel who appeared at the hearing, and the record in this case.  Pursuant to Fed. R. Bankr. P. 7052, findings of fact and conclusions of law not set forth in this Order are as set forth

---

[1] Initially-capitalized terms not defined herein shall have the meanings ascribed to them in the Confirmed Plan and the Confirmation Order.

in the record of the hearing. Having considered all of the foregoing, and having found that notice of the relief requested was appropriate under the circumstances, IT IS HEREBY ORDERED that:

1. <u>Approval of Modifications</u>. The Modification Motion is granted in its entirety pursuant to Bankruptcy Code section 1127(b), such that the Plan, as modified by this Order ("<u>Modified Plan</u>"), is confirmed pursuant to Bankruptcy Code section 1129. The Court finds that the modifications provided for under the Modified Plan are non-material, such that no re-solicitation of votes on the Modified Plan is required. On and after the date of entry of this Order, references to "the Plan," including references in the Confirmation Order, shall be deemed to be references to the Modified Plan and, except as expressly modified by this Order, the terms of the Confirmation Order shall apply to the Modified Plan with equal force and effect.

2. <u>Objections</u>. Any objections to the Modification Motion or confirmation of the Modified Plan, or any terms of the Confirmed Plan, whether filed on the docket or stated orally in court, and whenever filed or stated, are denied and overruled on the merits. To the extent the Ladera Response is considered an objection, it is overruled.

3. <u>Modifications</u>. The Confirmed Plan is hereby modified to the extent necessary to give full effect to the provisions of the Amended And Restated Term Sheet dated as of December 6, 2017 ("<u>Term Sheet</u>"), a copy of which is attached hereto as Exhibit "A." Accordingly, notwithstanding the language of the Confirmed Plan, the Plan is hereby deemed to include the following terms, which shall govern to the extent they conflict with the terms of the Confirmed Plan:

    a. <u>Final Order Date</u> – Buyer shall hold open its commitment to acquire the Purchased Assets under the Asset Purchase Agreement (as amended), provided that this Order, and any other Court orders that Buyer reasonably deems advisable to approve the Sale and consummation of the Modified Plan, are entered no later than December 22, 2017 (or such later date as Buyer may approve), and all such orders become final within fourteen (14) days of their entry, or such later date as Buyer may approve. The date on which the last of such orders becomes final is the "<u>Final Order Date</u>"). Buyer, in its discretion, may waive the requirement that all such orders become final before the Closing. However, if the Closing has not occurred by January 10, 2018,

Buyer shall have the right to terminate the Asset Purchase Agreement and to the prompt return of Buyer's $2 million deposit, without cost or penalty.

b. <u>Effective Date Payments from Purchase Price</u> - In accordance with the Modified Plan, on the Effective Date, the following payments shall be made, either directly from Escrow, or indirectly from Escrow via the Plan Administrator:

  i. <u>Closing Costs</u> – (approximately $36,000).

  ii. <u>Resort Property Taxes</u> – All real property taxes relating to the Resort accrued but unpaid as of the Closing Date (approximately $230,000), payable to the Placer County Treasurer – Tax Collector and the Washoe County Treasurer.

  iii. <u>Penta</u> - $550,000 to Penta in full satisfaction of Penta's superpriority lien claim incurred in connection with the replacement of the roof of the retail section of the Resort.

  iv. <u>Lien Litigation Reserve</u> – a total of $15 million, which is to be distributed as follows in accordance with the Lien Litigation Resolution:

    1. Penta - $8,025,000 to Penta on account of the claims of Penta, Penta's subcontractors and D4US, LLC (collectively, the "<u>Penta Payees</u>").

    2. Hall - $6,855,000 to Hall on account of Hall's Administrative Claim (in the amount of $1,244,617.90 as of November 28, 2017) and Hall's Allowed Class 2 Secured Claim (in the amount of $30,772,679.24 as of November 28, 2017), subject to section 3(b)(vi) below.

    3. Other Mechanics Lien Holders - $120,000 to be distributed in accordance with the terms of the Lien Litigation Resolution.

  v. <u>Hall</u> – After payment of those amounts set forth in subsections (i), (ii), (iii) and (iv) above, and subject to adjustment in accordance with Sections 3(b)(vi) and 3(c) below, the balance of the Sale Proceeds in the approximate amount of $20,000,000 to Hall on account of Hall's Administrative Claim and Class 2 Secured Claim.

      vi. <u>Adjustments</u> – The amounts set forth above in subsections (iii) and (iv) are fixed and will not change. The amounts set forth in subsection (i) and (ii) are estimates based on a Closing Date of December 28, 2018. To the extent the Closing Date occurs later, or such actual amounts vary from the estimates, or any adjustments are required in accordance with Section 5(e) of the Term Sheet, then the amounts set forth in subsections (i), (ii) and (v) may change, all in accordance with the Term Sheet.

c. <u>Plan Payment</u>. In accordance with the Modified Plan, on the Effective Date, the following payments shall be made either (i) indirectly from Escrow via the Plan Administrator or (ii), if directed in writing by the Plan Administrator prior to the Closing in the interests of time, directly to the recipient(s) set forth below by wire rather than to an account controlled by the Plan Administrator:

      i. On, or no earlier than one business day prior to, the Effective Date, counsel for the Committee shall transfer Buyer's $2 million deposit to Escrow. In accordance with the Term Sheet, the amount of the Plan Payments has been increased to $2,355,000 which, on the Effective Date, the Buyer, through Escrow, shall transfer to the Plan Administrator to be held in trust for and distributed to the beneficiaries under the Modified Plan. The Plan Administrator shall use the Plan Payment solely to satisfy the Plan Obligations, strictly in accordance with the Modified Plan, as follows:

1) Unsecured priority tax claims (in the approximate amount of $2,000);

2) Priority non-tax claims (in the approximate amount of $16,000);

3) General administrative expense claims (in the approximate amount of $218,000)[2];

4) Payments to Hall to reimburse it for cure payments previously made to Capital One (in the amount of $655,000);

---

[2] This figure is subject to adjustment pending confirmation that all payments that section 5(e) of the Term Sheet requires be paid current by Hall through the Closing Date are current.

5) Cure amounts for the Assumed Executory Contract with Collaborative Design Studio ($150,000);

6) Payments on account of past due real estate taxes on the Fairwinds Estate (approximately $1,000);

7) Payments for unsecured convenience claims (approximately $3,000);

8) A payment to establish the Litigation Trust ($50,000);

9) A payment to establish a reserve for a Plan Administrator and for post-Effective Date U.S. Trustee Fees ($25,000);

10) A payment to the U.S. Trustee for Quarterly Fees due through the Closing Date (estimated at $35,000 if the Closing Date is in 2017, and up to $250,000 if the Closing Date is in 2018)[3];

11) A fund for Allowed professional fees in the amount of $975,000; and

12) A payment to Paye in the amount of $225,000.

In accordance with Section 3(b)(vi) of this Order above, and Section 5(e) of the Term Sheet, to the extent that the amount necessary to satisfy the Plan Obligations as of the Closing Date exceeds the Plan Payment amount of $2,355,000, then the amount payable to Hall pursuant to Section 3(b)(v) shall be reduced accordingly, and any excess funds from the Plan Payment shall be paid to Hall.

4. Distributions in Kind and Assignments

  a. Hall – On the Effective Date, the Debtor shall be deemed to have sold and assigned to Hall, free and clear of all liens, claim and encumbrances, all of the furniture, fixtures and equipment that is owned by the Debtor and currently being stored in the Sparks, NV warehouse ("Cal Neva FF&E"). The Debtor shall execute any documents reasonably required by Hall to evidence such sale.

---

[3] If the Closing Date occurs in 2018, the additional amount of U.S. Trustee Quarterly Fees that would become due by virtue of the Closing occurring in the first quarter of 2018, instead of the last quarter of 2017, shall be borne by Hall (40%), Penta (40%), and the professionals employed by the estate (20%) by having the payments provided for under sections 3(b)(iii) [Penta], 3(b)(iv)(2) [Hall], and 3(c)(i)(11) [professionals] of this Order reduced by the appropriate amount.

b. Paye – On the Effective Date, the Debtor shall be deemed to have sold and assigned to Paye, free and clear of all liens, claims and encumbrances, all of the un-affixed furnishings and personal property that is owned by the Debtor and presently located in the Fairwinds Estate ("Fairwinds Personal Property"), but only to the extent that such property is removed from the Fairwinds Estate at Paye's sole expense prior to January 10, 2018.  In the event that the Closing occurs prior to January 10, 2018 (i) Buyer will have no responsibility for, and will not insure, the Fairwinds Personal Property during the period between the Closing and January 10, 2018; (ii) Paye will be solely responsible for any risk of loss or damage to the Fairwinds Personal Property during the period between the Closing and January 10, 2018; (iii) Paye will be solely responsible for any damage to the Fairwinds Estate premises occurring during the removal of the Fairwinds Personal Property; and (iv) upon reasonable prior notice, Buyer will grant Paye reasonable access to the Fairwinds Estate to remove the Fairwinds Personal Property during the period between the Closing and January 10, 2018, so long as the Fairwinds Personal Property is removed by Paye prior to January 10, 2018.

c. Plan Documents.

   i. Amendment of Plan Documents - the Debtor, the Buyer, and all other signatory parties are hereby authorized to amend, alter or revise the Plan Documents (including the Asset Purchase Agreement and the Addendum thereto) to the extent necessary to reflect the provisions of this Order, the Term Sheet and the Modified Plan, and such revised documents shall be deemed to be "Plan Documents" within the meaning of the Confirmation Order.  For the sake of clarity, the revised documents that were filed with the Court on December 19, 2018 with the Submission Of Revised Transfer Documents Re Purchased Assets Under First Amended Plan Of Liquidation As Modified (December 21, 2017) (Docket No. 1069) are hereby approved in all respects, and shall be considered part of the "Plan Documents."  The

        Debtor is hereby authorized and directed to enter into, and to perform, all of its obligations under such revised Plan Documents, and to take such actions as are necessary to effectuate the terms of the Asset Purchase Agreement and consummate the Sale to the Buyer, without any further company authorization or order of this Court.  The Debtor shall fully execute all Plan Documents to which it is a required signatory, and deliver fully executed originals and copies thereof to the Escrow Agent within 2 business days after entry of this Order.  Execution versions of the revised Plan Documents shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto.

  ii. <u>Limited Exculpation</u> - For the avoidance of doubt, and in furtherance of Fed. R. Bankr. P. 6004(f)(2) and other applicable law, the Court hereby confirms and orders that there shall be no personal liability for any individual who executes any documents, including the revised Plan Documents, that the Buyer reasonably deems necessary to effectuate the transfer of the Purchased Assets, including without limitation the Fairwinds Estate, to the Buyer, and any such individual is exculpated from any personal liability that might otherwise arise on account of the execution of such Plan Documents.

  iii. <u>Other Documents</u> – the Debtor is hereby authorized to enter into and perform under any other documents required to implement the Modified Plan, including any and all documents required to give effect to the Lien Litigation Resolution.

d. <u>Paye Settlement</u> – The Court finds that the release of claims between the Debtor and Paye as provided for in Section 9 of the Term Sheet is fair, reasonable, and in the best interests of the Debtor's estate.  Such release shall include a complete release by Paye of all caretaker expenses or other maintenance or administrative expense claims related to the Fairwinds Estate, including any claims relating to the Court's prior *Order Approving Stipulation for Limited Access to Fairwinds Estate and Potential for*

*Allowed Administrative claims to Protect, Maintain and Preserve Fairwinds Estate* [Docket No. 748], which is deemed terminated. Such settlement and release satisfies the standards set forth in Fed. R. Bankr. P. 9019 and in *Martin v. Kane (In re A & C Properties)*, 784 F. 2d 1377, 1380-81 (9th Cir. 1986), and is hereby approved. The Debtor is hereby expressly authorized to enter into such a settlement agreement without further order of this Court.

5. <u>No Stay of this Order</u> - Pursuant to its terms, the Confirmation Order was stayed for seven (7) days after its entry on October 16, 2017, and was further stayed by operation of the District Court's Stay in connection with the Appeals. Both of those prior stays now have expired and, as permitted by Fed. R. Bankr. P. 6004(h), 6006(d) and 7062, this Order shall <u>not</u> be stayed for any period of time after entry. Accordingly, this Order shall be effective immediately upon entry. This Order shall govern with respect to any conflict with any order that may be entered dismissing the Chapter 11 Case of the Debtor, or converting the Chapter 11 Case to Chapter 7.

6. <u>Conflicts Between this Order and the Confirmation Order</u>. The provisions of the Confirmation Order and of this Order shall be construed in a manner consistent with each other so as to give effect the purposes of each; <u>provided</u>, <u>however</u>, that if there is any inconsistency between any provisions of the Confirmed Plan, the Confirmation Order, the Term Sheet, and this Order, then, solely to the extent of such inconsistency, the provisions of this Order shall control.

7. <u>Waiver of Appeal Rights</u> – the parties whose counsel indicate below with their signature that they approve of the form of this order expressly waive any and all rights they might otherwise have to appeal and/or seek a stay this Order or the confirmation of the Modified Plan. Respectfully submitted by:

*/s/ Eric Goldberg*
**DLA PIPER LLP (US)**
ERIC GOLDBERG (CA Bar No. 157544)
eric.goldberg@dlapiper.com
PAUL WASSGREN (NV Bar No. 9216)
paul.wassgren@dlapiper.com
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4704
Tel: 310.595.3000
Attorneys for LAWRENCE INVESTMENTS, LLC

9

In accordance with LR 9021, the attorneys submitting this document certify as follows:

\_\_\_   The court has waived the requirement set forth in LR 9021(b)(1).

\_\_\_   No party appeared at the hearing or filed an objection to the motion.

 X    I have delivered a copy of this proposed order to all attorneys who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

| APPROVED | NOT APPROVED |
|---|---|
| */s/ Holly Estes* | */s/ Jason Rios* |
| HOLLY ESTES<br>Counsel for Paul and Evy Paye, LLC | JASON E. RIOS<br>Counsel for Ladera Development |
| APPROVED | APPROVED |
| */s/ Frank Wright* | */s/ Dawn Cica* |
| FRANK WRIGHT<br>Counsel for Hall CA-NV LLC | DAWN CICA<br>Counsel for the Penta Building Group, Inc. |
| APPROVED | APPROVED |
| */s/ Jane Kim* | */s/ Shirley S. Cho* |
| JANE KIM<br>Counsel for Debtor | SHIRLEY S. CHO<br>Counsel for The Official Committee of Unsecured Creditors for New Cal-Neva Lodge, LLC |

# # # #